## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Petitioner-Appellant,

v.

## K–MART CORPORATION and K–Mart Enterprises, Inc., Respondents-Appellees.

### No. 83–1666.

United States Court of Appeals, Sixth Circuit.

Argued March 6, 1986.

Decided July 7, 1986.

Rehearing and Rehearing En Banc Denied Aug. 22, 1986.

---

Miguel Ortiz, Emory J. Bailey, Charlie C. Taylor, E.E.O.C., Detroit, Mich., Dianna B. Johnston (argued), Washington, D.C., for petitioner-appellant.

Peter Palmer, Labor Relations Counsel, K–Mart Corp., Troy, Mich., Richard T. Sampson (argued), Kathleen Pontone, Baltimore, Md., for respondents-appellees.

Before JONES and NELSON, Circuit Judges, and EDWARDS, Senior Circuit Judge.

PER CURIAM.

This is the second time that this court has heard an appeal in this case. In the first instance when this case was heard here, this court remanded on K–Mart Corporation and K–Mart Enterprises, Inc.'s (hereinafter "K–Mart") representations that the EEOC's use of the effective date of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. in an EEOC charge was insufficient to support a subpoena. Our opinion followed the holdings of the Eighth Circuit on identical issues in *Shell Oil Co. v. EEOC*, 676 F.2d 322 (8th Cir.1982). This court concluded that the EEOC should be given an opportunity to further amend its charge in an attempt to comply with Section 706(b), as amended, 42 U.S.C. § 2000e–5(b). See *EEOC v. K–Mart Corp.*, 694 F.2d 1055 (6th Cir.1982). On remand, the District Court dismissed the EEOC's enforcement action for failure to comply with Section 706(b).

The Eighth Circuit opinion in *Shell Oil* has now, however, been reversed by the Supreme Court of the United States in an opinion which five members of the Court joined fully and four members concurred in part and dissented in part. In *EEOC v.*

*Shell Oil Co.,* 466 U.S. 54, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984), the Supreme Court addressed the identical question before us and held that, in a quite similar set of facts, the EEOC was entitled to enforcement of its subpoena. *Shell Oil,* 466 U.S. at 57–74, 104 S.Ct. at 1625–1634.

It is not uncommon for Congress to leave some details in its statutory enactments which lack crystal clarity. That has proved to be the case in relation to this statute. Specifically, we now hold, contrary to our original decision, that the use of the beginning date of the Congressional enactment of Title VII as the effective date is appropriate under this record.

## I.

■ We hold that the essential disputes which were present in this Court's initial consideration of this case were present also in the Supreme Court's consideration and decision of the *Shell Oil* case.

In *Shell Oil,* the Supreme Court expressly indicated that certiorari was granted "to resolve the confusion in the Courts of Appeals concerning the material that must be included in charges of employment discrimination and notices thereof before the EEOC may obtain judicial enforcement of an administrative subpoena." *Shell Oil,* 466 U.S. at 61, 104 S.Ct. at 1627. Justice Marshall, in writing for the Court, carefully and closely reviewed Title VII's enforcement procedure:

In its current form, Title VII sets forth "an integrated, multistep enforcement procedure" that enables the Commission to detect and remedy instances of discrimination. See *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 359, 97 S.Ct. 2447, 2450, 53 L.Ed.2d 402 (1977). The process begins with the filing of a charge with the EEOC alleging that a given employer [10] has engaged in an unlawful employment practice. A charge may be filed by an aggrieved individual or by a member of the Commission. § 2000e–5(b). A Commissioner may file a charge in either of two situations. First, when a victim of discrimination is

reluctant to file a charge himself because of fear of retaliation, a Commissioner may file a charge on behalf of the victim. *Ibid;* 29 CFR §§ 1601.7, 1601.11 (1983). Second, when a Commissioner has reason to think that an employer has engaged in a "pattern of practice" of discriminatory conduct, he may file a charge on his own initiative. § 2000e–6(e).

Prior to 1972, different statutory requirements governed charges filed by aggrieved individuals and charges filed by Commissioners. Aggrieved parties were required simply to state their allegations "in writing under oath." Pub.L. 88–352, § 706(a), 78 Stat. 259. By contrast, a Commissioner could file a charge only when he had "reasonable cause to believe a violation of [Title VII] ha[d] occurred," and was obliged to "se[t] forth the facts upon which [the charge was] based." *Ibid.*[11] In 1972, as part of a comprehensive set of amendments to the provisions of Title VII dealing with the EEOC's enforcement powers, Congress eliminated the special requirements applicable to Commissioners' charges. In its present form, § 706(b) of the statute provides simply that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e–5(b).

As originally enacted, Title VII required the EEOC to provide a copy of a charge to the employer accused of discrimination, but did not prescribe any time period within which the copy was to be delivered. Pub.L. 88–352, § 706(a), 78 Stat. 259. In 1972, Congress altered that provision to require the Commission to "serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on [the] employer ... within ten days" of the filing of the charge. 42 U.S.C. § 2000e–5(b).

After a charge has been filed, the EEOC conducts an investigation of the allegations contained therein.[12] In connection with its inquiry, the Commission

is entitled to inspect and copy "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by [Title VII] and is relevant to the charge under investigation." § 2000e–8(a). In obtaining such evidence, the Commission may exercise all of the powers conferred upon the National Labor Relations Board by 29 U.S.C. § 161, including the authority to issue administrative subpoenas and to request judicial enforcement of those subpoenas. § 2000e–9. If, after completing its investigation, the EEOC determines that there is "reasonable cause to believe that the charge is true," it must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." § 2000e–5(b).[13] If those methods prove ineffectual, the Commission is empowered to bring a civil action against the employer. § 2000e–5(f)(1).

At issue in this case is the relationship between three of the steps in the integrated procedure just described: the charge; the notice given to the employer of the allegations against him; and the judicial enforcement of an administrative subpoena of personnel records relevant to the allegations. It is apparent from the structure of the statute that two of those steps—the charge and the subpoena—are closely related. As indicated above, the EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction,[14] the EEOC is entitled to access only to evidence "relevant to the charge under investigation." § 2000e–8(a).

The legislative history makes clear that this limitation on the Commission's authority is not accidental. As Senators Clark and Case, the "bipartisan captains" responsible for Title VII during the Senate debate, explained in their Interpretative Memorandum:

"It is important to note that the Commission's power to conduct an investi-

gation can be exercised only after a specific charge has been filed in writing. In this respect the Commission's investigatory power is significantly narrower than that of the Federal Trade Commission or of the Wage and Hour Administrator, who are authorized to conduct investigations, inspect records, and issue subpoenas, whether or not there has been any complaint of wrongdoing." 110 Cong.Rec. 7214 (1964) (citations omitted).

*Shell Oil,* 466 U.S. at 62–65, 104 S.Ct. at 1627–1629 (footnotes omitted).

The Supreme Court then proceeded to deal with the 1972 amendments adopted by Congress as follows:

When Congress in 1972 revamped Title VII, it retained the provision linking the Commission's investigatory power to outstanding charges, and nothing in the legislative history of the 1972 amendments suggests that Congress intended to expand the range of materials to which the Commission could demand access.

In construing the EEOC's authority to request judicial enforcement of its subpoenas, we must strive to give effect to Congress' purpose in establishing a linkage between the Commission's investigatory power and charges of discrimination. If the EEOC were able to insist that an employer obey a subpoena despite the failure of the complainant to file a valid charge, Congress' desire to prevent the Commission from exercising unconstrained investigative authority would be thwarted. Accordingly, we hold that the existence of a charge that meets the requirements set forth in § 706(b), 42 U.S.C. § 2000e–5(b), is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC.[15]

The relationship between the requirement that an employer be notified promptly of allegations against it and the EEOC's subpoena power is less clear. The statutory provisions that define the Commission's investigative authority do not mention the notice requirement. See

§§ 2000e–8, 2000e–9. And nothing in the legislative history of the sharpened notice provision that was added to § 706 in 1972 suggests that Congress intended or assumed that compliance therewith was a prerequisite to judicial enforcement of the Commission's subpoenas. There is thus substantial reason to doubt whether an employer should be able to resist efforts by the Commission to enforce a subpoena on the ground that the EEOC had not adequately notified the employer of the "date, place and circumstances" of the employer's alleged unlawful employment practices or had not done so within 10 days of the filing of the charge.[16]

For two reasons, however, we decline to decide that troublesome question in this case. First, all of the parties have assumed that noncompliance with the notice requirement is a legitimate defense to a subpoena enforcement action.[17] Second, our conclusion that the Commission did comply with the notice provision in this case, see Part II–C, *infra*, renders it unnecessary to determine whether the judgment of the Court of Appeals could withstand scrutiny if the Commission had not done so. In short, solely for the purpose of our decision today, we assume that compliance with the notice requirement embodied in § 706(b) is a jurisdictional prerequisite to judicial enforcement of a Commission subpoena.

### B

The statute itself prescribes only minimal requirements pertaining to the form and content of charges of discrimination. Section 706(b) provides merely that "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e–5(b). However, in accordance with the last-mentioned clause, the EEOC has promulgated a regulation that provides, in pertinent part, that "[e]ach charge should contain ... [a] clear and concise statement of the facts, including the pertinent dates, constituting the al-

leged unlawful employment practices." 29 CFR § 1601.12(a)(3) (1983).[18]

Until rescinded, this rule is binding on the Commission as well as complainants. See *United States v. Nixon,* 418 U.S. 683, 695–696, 94 S.Ct. 3090, 3100–3102, 41 L.Ed.2d 1039 (1974); *Service v. Dulles,* 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957).

There is no question that the charge in this case comported with the requirements embodied in the statute; Commissioner Norton's allegations were made in writing and under oath. The only ground on which the validity of the charge can fairly be challenged is Commissioner Norton's compliance with the Commission's regulation. The Court of Appeals concluded that the charge did not contain enough information to satisfy § 1601.12(a)(3). 676 F.2d, at 325. To assess that conclusion, we must explicate the crucial portion of the regulation as applied to a charge alleging a pattern or practice of discrimination.[19]

Three considerations, drawn from the structure of Title VII, guide our analysis. First, a charge of employment discrimination is not the equivalent of a complaint initiating a lawsuit. The function of a Title VII charge, rather, is to place the EEOC on notice that someone (either a party claiming to be aggrieved or a Commissioner) believes that an employer has violated the title. The EEOC then undertakes an investigation into the complainant's allegations of discrimination. Only if the Commission, on the basis of information collected during its investigation, determines that there is "reasonable cause" to believe that the employer has engaged in an unlawful employment practice, does the matter assume the form of an adversary proceeding.

Second, a charge does have a function in the enforcement procedure prescribed by Title VII. As explained above, the Commission is entitled to access only to evidence "relevant" to the charge under investigation. § 2000e–8. That limitation on the Commission's investigative authority is not especially constraining.

Since the enactment of Title VII, courts have generously construed the term "relevant" and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer.[20] In 1972, Congress undoubtedly was aware of the manner in which the courts were construing the concept of "relevance" and implicitly endorsed it by leaving intact the statutory definition of the Commission's investigative authority.[21] On the other hand, Congress did not eliminate the relevance requirement, and we must be careful not to construe the regulation adopted by the EEOC governing what goes into a charge in a fashion that renders that requirement a nullity.

Third, it is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired. By 1972, Congress was aware that employment discrimination was a "complex and pervasive" problem that could be extirpated only with thoroughgoing remedies; "[u]nrelenting broadscale action against patterns or practices of discrimination" was essential if the purposes of Title VII were to be achieved.[22] The EEOC, because "[i]t has access to the most current statistical computations and analyses regarding employment patterns" was thought to be in the best position "to determine where 'pattern or practice' litigation is warranted" and to pursue it.[23] Accordingly, in its amendments to § 707, Congress made clear that Commissioners could file and the Commission could investigate such charges.[24] Our interpretation of the EEOC's regulations should not undercut the exercise of those powers.

*Shell Oil*, 466 U.S. at 65–70, 104 S.Ct. at 1629–1631 (footnotes omitted).

The Supreme Court concluded:

With these concerns in mind, we think that the most sensible way of reading the prescription embodied in 29 CFR § 1601.12(a)(3) (1983) in the context of pattern-and-practice cases is as follows: Insofar as he is able, the Commissioner should identify the groups of persons that he has reason to believe have been discriminated against, the categories of employment positions from which they have been excluded, the methods by which the discrimination may have been effected, and the period of time in which he suspects the discrimination to have been practiced.

The charge issued by Commissioner Norton, as amended, plainly satisfied the foregoing standards. The charge identified Negroes and women as the victims of respondent's putative discriminatory practices. It specified six occupational categories to which Negroes had been denied equal access and seven categories to which women had been denied equal access.[27] It alleged that respondent had engaged in discrimination in "recruitment, hiring, selection, job assignment, training, testing, promotion, and terms and conditions of employment." And it charged respondent with engaging in these illegal practices since at least the effective date of the Civil Rights Act. We therefore conclude that the charge complied with the requirement embodied in § 1601.12(a)(3) that a complainant must state "the facts ... constituting the alleged unlawful employment practices."[28]

*Shell Oil*, 466 U.S. at 72–74, 104 S.Ct. at 1632–1634 (footnotes omitted).

In the present case, the charge issued by former Commissioner Ethel Bent Walsh stated:

Pursuant to the provisions of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* (Supp. II, 1972), I charge the following employers with unlawful practices:

K mart Corporation
3100 West Big Beaver
Troy, Michigan

K mart Enterprises Corporation
3000 West Fourteen Mile Road
Royal Oak, Michigan

The charge pertains to the Michigan headquarters office K mart Corporation and the Michigan Headquarters of K

mart Enterprises Corporation, a subsidiary of the K mart Corporation.

I believe that the above named employers are within the jurisdiction of the Equal Employment Opportunity Commission and have violated Sections 703 and 707 of the Civil Rights Act of 1964, as amended, by unlawfully discriminating against Blacks because of their race with respect to recruitment, hiring, job classification, job assignment, promotion, job segregation, discharge and other terms and conditions of employment; against Hispanics because of their national origin with respect to recruitment, hiring, promotion and other terms and conditions of employment and against women because of their sex with respect to recruitment, hiring, job classification, assignment, promotion and other terms and conditions of employment.

More specifically, the employer's unlawful discriminatory practices include but are not limited to:

1. Referring and failing to recruit and select Blacks, women and Hispanics at all levels of employment on an equal basis with white males, because of their race, sex and national origin.

2. a. Restricting and/or excluding Blacks from positions as officials, managers, professionals, technicians, clerical workers, craft workers and service workers at K mart Headquarters, because of their race and assigning and/or reclassifying Blacks to positions of lower pay, lesser responsibility, and fewer opportunities for advancement than positions to which similarly qualified white males are assigned;

b. Restricting and/or excluding women from positions as officials and managers, professionals, and technicians, at K mart Headquarters, because of their sex and/or reclassifying women to positions of lower pay, lesser responsibility, and fewer opportunities for advancement than positions to which similarly qualified white males are assigned;

c. Restricting and/or excluding Hispanics from positions as officials and managers and clerical workers at K mart Headquarters because of their national origin;

3. a. Restricting and/or excluding Blacks from positions as officials and managers and clerical workers at K mart Enterprises because of their race;

b. Restricting and/or excluding women from positions as officials and managers at K mart Enterprises because of their sex;

4. Failing to provide Blacks, Hispanics and women with opportunities for promotion equal to those afforded white males;

5. Failing to provide Blacks with the same working conditions that are provided to whites, because of their race;

6. Discharging Blacks, because of their race, at K mart Headquarters.

The class aggrieved includes, but is not limited to, all Blacks and women who have been, continue to be or may in the future be adversely affected by the unlawful practices complained of herein.

Subsequently, Commissioner Walsh amended the charge in the following manner:

On September 28, 1979, I signed a Commissioner Charge against

K mart Corporation
3100 West Big Beaver
Troy, Michigan
K mart Enterprises, Corporation
3000 West Fourteen Mile Road
Royal Oak, Michigan

When I signed the charge I intended to cover all the unlawful employment practices identified therein occurring from July 2, 1965, continuing through at least the date of the charge and I believed that the charge as written did cover that time period. Nevertheless, to clarify any possible ambiguity that may exist in view of the decision in *EEOC v. Dean Witter Co.*, [643 F.2d 1334] (9th Cir.1980), I hereby amend the original charge, which is incorporated here by reference, to state that I have reason to believe that the named employers have engaged in the identified unlawful employment prac-

tices on a continuing basis from July 2, 1965 until the present.

In our opinion, the charge, as amended, clearly satisfies the standards set forth by the Supreme Court in *Shell Oil.*

The charge identified Blacks, women and Hispanics as the victims of K–Mart's discriminatory practices. It specified six occupational categories to which Blacks had been denied equal access, four occupational categories to which women had been denied equal access, and three occupational categories to which Hispanics had been denied equal access. It alleged that K–Mart had engaged in discrimination in "recruitment, hiring, job assignment, promotion, job segregation, discharge and other terms and conditions of employment." It also charged K–Mart with engaging in these illegal practices since at least the effective date of the Civil Rights Act. Therefore, we hold that contrary to K–Mart's contention, the EEOC is entitled to enforcement of its subpoena.

## II.

■ We also rule against appellees' contention that the EEOC has not acted in good faith in using July 2, 1965, the effective date of Title VII, as the beginning date of the alleged discriminatory practices. The sufficiency of a charge under Section 706(b) and 29 C.F.R. § 1601.12(a)(3) should be determined from the face of the charge. The Commissioner's good faith is presumed because of Section 706(b)'s oath and affirmation requirement. Upon review of the record in this case, we find no evidence of bad faith on the Commissioner's part. Therefore, the EEOC is entitled to enforcement of its subpoena.

## III.

■ We leave to the last appellees' argument that this court's original opinion provides the law of the case. Whatever weight a panel of this court should give to a prior opinion of another panel of our court, it clearly cannot control as opposed to an opposite view expressed in final language by the United States Supreme Court in a similar case.

For all of the foregoing reasons, the judgment below is reversed and the case is remanded with instructions to order that the EEOC's enforcement subpoena be enforced.