**UNITED STATES of America,**

v.

**Gregory M. PATZER.**

**No. 07 CR 90–1.**

United States District Court, N.D. Illinois, Eastern Division.

April 28, 2008.

Robert David Seeder, Federal Defender Program, Chicago, IL, for Defendant.

April Perry, AUSA, United States Attorney's Office, Chicago, IL, Pretrial Services, Probation Department, for Plaintiff.

## STATEMENT OF REASONS

JOAN B. GOTTSCHALL, District Judge.

On April 2, 2008, the court sentenced the defendant in this case, Gregory M. Patzer ("Patzer"), to a term of imprisonment of thirteen years to be followed by a five-year term of supervised release, as well as $4,923 in restitution and a $300 special assessment. The reasons for this sentence were stated in open court and are fully set forth herein.

### I. BACKGROUND[1]

Patzer is a thirty-year old man with a long history of family troubles, mental health issues, and drug abuse. At the age of fifteen, he was expelled from his family and placed with a foster family. He has a history of non-violent crimes that relate to drugs or to obtaining money to buy drugs.

---

1. The defendant filed his sentencing memorandum under seal pursuant to Local Rule 26.2, in accordance with a protective order dated March 10, 2008. He did so to ensure that Patzer's psychological evaluation, school records, and the information contained in personal interviews remained shielded from public view. In order to respect Patzer's privacy, the court discusses herein only those facts upon which the determination of sentence rested.

Patzer has attempted drug treatment several times, and has endured a series of medications and treatment in an effort to ameliorate his mental health problems, none of which has been entirely successful. Patzer has been variously diagnosed with a slew of psychiatric afflictions, from depression to bipolar disorder. However, it was only recently—in anticipation of this sentencing—that Patzer was diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD").

In the six years immediately preceding the crimes for which he is being sentenced herein, Patzer had achieved some success in being a productive member of society. He had been in methadone treatment and had steady work as a welder and machinist. However, Patzer began using heroin again around February 2007. On February 24, 2007, he robbed a TCF Bank in Schaumburg, Illinois and, on February 28, 2007, he robbed a Mutual Bank in Roselle, Illinois. During both robberies, Patzer showed the teller a handgun and demanded cash. He got away with about $5,000 total, which he says he used to buy drugs. He fled Illinois and turned up a few weeks later at a Sheraton Hotel in Seattle, Washington, where he ate breakfast and left without paying. When he was confronted by a hotel security guard, Patzer told him that he was wanted for bank robbery in Illinois. The Seattle, Washington Police Department took him into custody, where he confessed to the two bank robberies. On August 15, 2007, the court accepted Patzer's plea of guilty to Counts One (bank robbery), Three (bank robbery), and Four (firearm) of the Indictment.

## II. SENTENCING PROCEDURE

■ "In sentencing a defendant, the district court is obliged first to calculate the correct advisory guidelines range and then to decide whether to impose a sentence within the range or outside of it." *United*

*States v. Miranda*, 505 F.3d 785, 791 (7th Cir.2007) (citing *United States v. Robinson*, 435 F.3d 699, 700–01 (7th Cir.2006)). The first step requires calculation of the applicable guidelines. *Gall v. United States*, —— U.S. ——, ——, 128 S.Ct. 586, 596, 169 L.Ed.2d 445 (2007); *Miranda*, 505 F.3d at 791. However, "the [g]uidelines are not mandatory and thus the [district court's] range of choice dictated by the facts of the case is significantly broadened." *Gall*, 128 S.Ct. at 602. The second step in sentencing requires an application of the factors set forth in 18 U.S.C. § 3553(a), which remains mandatory even though the guidelines are treated as advisory. *Miranda*, 505 F.3d at 791 (citing *United States v. Booker*, 543 U.S. 220, 261–63, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)).

■ Typically, a court considers the Pre–Sentence Report ("PSR") and its interpretation of the guidelines and then hears arguments by prosecution and defense as to whether a guideline sentence should apply. *Id.* (citing *Rita v. United States*, —— U.S. ——, ——, 127 S.Ct. 2456, 2459, 168 L.Ed.2d 203 (2007)). The court then determines whether to impose a sentence at, above, or below the guideline range keeping in mind that "[a] sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them." *Gall*, 128 S.Ct. at 598. Where the evidence presented indicates that the case falls outside the "heartland" of the intended guidelines, or where the guideline fails to properly reflect the § 3553(a) considerations, or where the case warrants a different sentence, the court may impose a sentence below the guideline range. *See Rita*, 127 S.Ct. at 2465 (discussing the importance of subjecting the defendant's sentence to adversarial testing by the district court). This is true

"even though that deviation seemingly contravenes a broad policy pronouncement of the Sentencing Commission." *See United States v. Martin*, 520 F.3d 87, 95–97 (1st Cir.2008) (noting that a district court may impose a sentence below the guideline range for a career offender, 28 U.S.C. § 994(h) notwithstanding) (citing *Kimbrough v. United States*, — U.S. —, — — —, 128 S.Ct. 558, 574–75, 169 L.Ed.2d 481 (2007)).

## III. ADVISORY GUIDELINES RANGE AND THE PARTIES' ARGUMENTS

■ At the time of Patzer's plea agreement, the government anticipated an offense level with respect to Counts One and Three of 25, an anticipated criminal history category of II, and an advisory sentencing guidelines range of 63 to 78 months' imprisonment. Count Four, the firearms charge, carries a mandatory consecutive sentence of 84 months' imprisonment. Thus, at the time of his plea, Patzer's anticipated guideline range for all three counts was 147 to 162 months.

In the PSR, the probation officer concluded that Patzer has a criminal history category of IV. This raised the advisory guideline range for Counts One and Three to 110 to 137 months, which raised the total guideline range to 194 to 221 months. Additionally, the probation officer concluded that Patzer qualified as a career criminal, pursuant to U.S.S.G. § 4B1.1,[2] based on two prior felony convictions: a controlled substance offense in 1997 and a conviction for aggravated robbery in 1999. This boosted the applicable advisory guideline range for Counts One and Three to 262 to 327 months, bringing his total guideline range to 346 to 411 months (approximately twenty-eight to thirty-four years).

The government argued that a sentence within the guideline range was appropriate. It cited Patzer's criminal history and his repeated failed rehabilitation through drug treatment and the criminal justice system. It also stressed the fact that the nature of the crime was such that Patzer was a danger to the community, and a long sentence was needed to deter him from future crimes. The defense did not object to the PSR guideline calculations, but argued that the strict application of the guidelines would lead to a sentence greater than necessary to accomplish the goals of sentencing. The defense urged the court not to apply the career offender enhancement because it overstated Patzer's past crimes, especially where Patzer's criminal activity had been precipitated by the estrangement from his family, untreated ADHD, and long-term drug addiction. The defense suggested a sentence of thirteen years (156 months) as sufficient punishment, which is approximately what was contemplated originally in the plea agreement and represents a 20% variance from the minimum guideline range before the career criminal application.

## IV. 18 U.S.C. § 3553(a) FACTORS

Section 3553(a) provides in relevant part:

(a) Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in de-

---

**2.** A defendant is a career criminal if: (1) he was at least eighteen years old at the time he committed the instant offense; (2) the instant offense is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1.

termining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....

18 U.S.C. § 3553(a). Under § 3553(a)(2), "the primary purposes of a criminal sentence are to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes by the defendant, and to provide the defendant with needed training, medical care or correctional treatment in the most effective manner." *Miranda*, 505 F.3d at 793.

## A. The Career Offender Application

This case is atypical for a career criminal application. First, the nature of the underlying crimes is less serious than those typically encompassed by the career criminal application. Patzer's drug conviction was for selling $50–worth of marijuana and LSD to an undercover informant. The aggravated robbery involved a demand for $30 made to a giftcard store employee where, although he said he had a gun, Patzer did not display a weapon. He did not physically harm anyone in either crime, and did not commit the crimes for profit; both crimes were fueled by a need for money to buy drugs to feed Patzer's own drug addition. Although crimes resulting from drug addiction are an insufficient basis for departure under the guidelines, a court may properly consider the "realities of [the defendant's] personal history and characteristics," including reasons for the crimes, under § 3553(a)(1). *See, e.g., United States v. Hernandez*, 04 CR 424–20, 2005 WL 1423276, *7–8 (S.D.N.Y. June 13, 2005) (finding the career offender designation misplaced in part because the defendant's non-violent crimes stemmed from drug addiction).

Second, there is a temporal gap between the crimes on account of which Patzer qualifies as a career criminal and the instant crime. He was nineteen when he was convicted of unlawful delivery of a controlled substance and twenty-one when convicted of aggravated robbery. He is now thirty years old. Almost one-third of his life has passed since those crimes occurred and the court is struck by Patzer's young age when he committed those offenses. Such circumstances may "undercut[ ] the need to rely on those convictions to enhance [the] sentence." *See United States v. Naylor*, 359 F.Supp.2d 521, 524 (W.D.Va.2005) (refusing to apply the career offender designation where the defendant was seventeen when he committed the crimes of breaking and entering).

Also, the great disparity between the guideline sentence here and the sentences imposed for Patzer's prior offenses gives the court pause. The longest period of incarceration Patzer has served thus far is a term of two years, on a five-year sentence. Now, the government requests a sentence of between twenty-eight and thirty-four years. Courts have noted that a large disparity between the punishment prescribed by the career criminal designa-

tion and the time served for prior offenses might indicate that the career criminal sentence is in excess of that needed to accomplish the desired deterrent effect. *See United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir.2001) (citing 18 U.S.C. § 3553(b) to explain its consideration of past sentences under § 4A1.3 pre-*Booker*); *United States v. Qualls*, 373 F.Supp.2d 873, 877 (E.D.Wis.2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and deter future misconduct, to note the length of any previous sentences imposed.").

The nature of the past felonies, the temporal gap between those crimes and the instant crime, and the huge disparity in sentences caused by application of the career offender guidelines suggests that imposing a sentence within the range recommended by the PSR may not comport with the goals of sentencing. Rather, the advisory range of 346 to 411 months pursuant to § 4B1.1 overstates the seriousness of Patzer's prior qualifying convictions and is in excess of the sentence required for deterrence.

## B. Nature of Offense

The instant offenses represent an escalation in the nature of Patzer's criminal conduct, from robbery and small-scale drug sales to robbery of a bank. Also, Patzer carried a gun to the robberies. There is no evidence in the record, however, that Patzer pointed the gun at anyone or waved it around: it appears it was tucked into his belt for one robbery and was shown to one teller at the other robbery. The goal of the robbery was to obtain money for drugs and Patzer obtained about $5,000 in total from both robberies. Obviously, armed robbery is a serious crime, deserving of serious punishment. Nevertheless, on a sliding scale,

this armed bank robbery was not the most heinous: Patzer acted alone, no one was injured or killed, and only a modest amount of money was taken.

Perhaps as significant, the fact that Patzer turned himself into the authorities, and the manner in which he did so, indicates he is exhausted with his criminal life.

## C. Character of Defendant

The court concludes that there are several reasons that Patzer's background and character mitigate against a guideline sentence.

First, at the time the probation officer prepared the PSR, she did not have the benefit of the psychological evaluation of Patzer. The PSR does not consider Patzer's undiagnosed ADHD and its resulting mental health problems as a possible reason for departure from the sentencing guidelines under § 5K2.13. Rather, the probation officer concluded that Patzer's mental health problems were caused by his drug use. PSR at 34:937–41. However, the previously-undiagnosed ADHD explains Patzer's self-medication with illegal drugs from a very young age, as well as his intolerance for past mental health treatment that did not address his actual problems. Patzer now has the benefit of an accurate medical diagnosis of his mental health problem: ADHD, and the record indicates that, properly diagnosed, his condition is treatable. The expert reports, the school reports, and the family letters all show that—with hindsight—much of Patzer's behavior has been caused by his ADHD.

The new diagnosis gives hope that Patzer's condition can be treated and his incentive to commit crimes decreased without "the added encouragement of a lengthy sentence." *See United States v. Miranda*, 505 F.3d 785, 793 (7th Cir.2007) (reserving to the district court's discretion whether a

long sentence was needed to deter a bank robber with a history of drug addiction and previously-undiagnosed schizophrenia from committing further crimes). With the proper treatment, provided for in the court's designation to the medical facility of the Bureau of Prisons, the chance of successful treatment increases and the risk of recidivism decreases. Defense counsel pointed out that the medical report indicates that Patzer's condition can be treated with medication and requested designation to the federal medical division to ensure that Patzer received the treatment he needs.

Second, Patzer had a difficult childhood, no doubt made more difficult by the absence of an appropriate diagnosis for his ADHD. The record indicates that his biological family was abusive and unsupportive, relinquishing custody of Patzer to DCFS at the age of 15. He suffered from psychological difficulties throughout his childhood and early adulthood, as indicated by repeat periods of commitment to an institution. Nevertheless, Patzer is, according to letters from friends and family, basically a good person with a heart who has never, even in the depths of his addiction, physically harmed anyone and who sincerely regrets the choices that have led him here. Patzer has a GED and some college education. He has a trade (machinist and welder). He has shown that he has the ability to be a productive member of society when he is not abusing drugs. His personal statement showed he was articulate and understood the mistakes he had made. The court concludes that the sentence imposed, plus the lengthy term of supervised release, provides ample opportunity for Patzer to receive treatment so that he can be rehabilitated.

## D. Needs of The Public

Although Patzer stands convicted of a violent crime, there is no evidence he has physically harmed the public. The reports indicate that he cooperated with law enforcement and suggest a willingness to take responsibility for his actions. A thirteen-year sentence provides for a significant period of confinement which reflects the seriousness of the crime, acts as an appropriate deterrent, protects the public, and provides the necessary length of time for Patzer to get treatment for his addiction and psychological problems. The risk of recidivism reduced by sentence that includes drug treatment and appropriate medical care for ADHD. Additionally, the court imposed the maximum possible term of supervised release to ensure that Patzer continues to get the help and treatment he so obviously needs.

## V. Conclusion

The court finds that Patzer's criminal conduct stems from his mental health problems and his ongoing drug addiction, but that these problems are treatable and Patzer's personal characteristics, education, and support from his foster family and friends indicate he has a capacity for rehabilitation. On balance, the court finds that a non-guideline sentence of thirteen years of incarceration (six years for Counts One and Three, to be served concurrently, and seven years for Count Four, to be served consecutively) meets § 3553(a)'s requirement to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. See 18 U.S.C. § 3553(a). Following incarceration, Patzer will be subject to a total of five years of supervised release (three years for Counts One and Three, and five for Count Four, to run concurrently). Due immediately is $300 for the mandatory special assessment and $4,923 in restitution (interest waived). The court finds that Patzer does not have the ability to pay a fine, and waives costs of prosecution, incarceration, and supervi-

sion. Count Two is dismissed upon the government's motion.