**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0312n.06

No. 09-2267

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*May 12, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| JAMES EDWARD GAPINSKI, | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | **O P I N I O N** |
| | ) | |

Before:  MOORE, WHITE, Circuit Judges; VARLAN, District Judge.[*]

**KAREN NELSON MOORE, Circuit Judge.**  James Edward Gapinski has been sentenced three times for conspiracy to manufacture marijuana.  On Gapinski's most recent appeal, this court held that the district court erred by anticipating a future Rule 35(b) motion when it granted a two-level departure for substantial assistance, rather than the four-level departure that the government had requested.  On remand, the district court erroneously believed that it lacked authority to reconsider its two-level departure.  In addition, while this appeal was pending before our court, the Supreme Court decided *Pepper v. United States*, --- U.S. ---, 131 S. Ct. 1229 (2011), which held that district courts may vary downward on account of post-sentencing rehabilitation.  *Pepper* abrogates the portion of our prior opinion that prevented Gapinski from having the district court consider his own post-sentencing rehabilitation.  For both reasons, we **VACATE** Gapinski's sentence and

_____

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

**REMAND** the case for resentencing. We also **GRANT** Gapinski's request to reassign the case to a different district court judge.

## I. BACKGROUND

### A. Gapinski's First Two Sentencing Hearings

On June 8, 2004, Gapinski was indicted for conspiracy to manufacture more than 100 marijuana plants in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(vii). This court detailed the substantive facts of that offense in *United States v. Gapinski (Gapinski II)*, 561 F.3d 467, 469–73 (6th Cir. 2009). Gapinksi pleaded guilty on September 27, 2004.

Prior to his first sentencing hearing, the government filed a motion based on United States Sentencing Guidelines (U.S.S.G.) § 5K1.1 for a four-level downward departure because Gapinski had provided substantial assistance:

> The government explained that Gapinski had given a proffer concerning his involvement in the marijuana-grow conspiracy and had provided significant information on the roles played by his three codefendants as well as the two other coconspirators, [Joseph] Hill and [Steven] Mayer. Because of Gapinski's early cooperation and willingness to testify, the government noted, each of Gapinski's three codefendants pleaded guilty rather than proceeding to trial, and coconspirators Hill and Mayer were indicted for their role in the conspiracy. The government further explained that Gapinski had agreed to testify against Hill and Mayer should they decide to go to trial.

*Gapinski II*, 561 F.3d at 470. When the district court sentenced Gapinski on December 22, 2004, it departed downward by two, rather than four, offense levels, "anticipat[ing]" that a Rule 35(b) motion would compensate Gapinski for any future assistance. *Id.* at 477. Gapinski's adjusted Guidelines range was 151 to 188 months of imprisonment. The district court sentenced Gapinski

to 156 months of imprisonment or, in the event that the Guidelines were not mandatory, 120 months. This court vacated the sentence following *Booker*. *United States v. Gapinski*, 226 F. App'x 592 (6th Cir. 2007) (*Gapinski I*).

On January 18, 2008, the district court resentenced Gapinski to 120 months of imprisonment. At this second sentencing hearing, Gapinski sought "an additional two-level downward departure and/or a variance" for the substantial assistance that he rendered between the first two sentencing hearings. *Gapinski II*, 561 F.3d at 475. "Specifically, Gapinski made himself available to testify against a coconspirator, Joseph Hill, which led Hill to plead guilty." *Id.* The Bureau of Prisons transported Gapinski from Oklahoma to Michigan so that he could testify against Hill. While Gapinski was being held in Michigan awaiting Hill's trial, Hill pleaded guilty, obviating any need for Gapinski's testimony. His willingness to stand ready to testify, however, made Gapinski vulnerable because "grapevine gossip" and the website www.whosarat.com made his cooperation with the government public knowledge among inmates. The district court denied Gapinski's motion.

When Gapinski appealed from the second sentencing hearing, this court reversed on two bases, both of which related to substantial assistance. First, the sentencing transcript "does not show that the district court ever considered or explained its reasons for rejecting Gapinski's argument for a lower sentence based on this substantial additional cooperation." *Id.* at 475. Second, at the first sentencing, "the district court . . . erred by improperly looking to the possibility of a post-sentencing reduction under Rule 35(b) in considering the § 5K1.1 motion," a mistake that the district court did not correct at the second sentencing. *Id.* at 477. Additionally, this court instructed the district court

to "consider Gapinski's arguments for a lower sentence based upon alleged diminished capacity due to ADHD [attention deficit hyperactivity disorder] and the need to avoid unwarranted similarities in the sentences imposed upon codefendants who are not similarly situated." *Id.* at 478.

## B. The Third Sentencing Hearing

On September 25, 2009, the district court sentenced Gapinski for a third time, again to a term of 120 months. At the outset, Gapinski's attorney "ask[ed] the Court to reconsider the initial [§] 5K1.1 motion," which resulted in this exchange:

> **The Court**: I've already ruled on the presentence substantial assistance, haven't I?
>
> **Ms. Lasker**: Yes, Your Honor, I believe that you did. But my understanding of--
>
> **The Court**: And I gave two points to that, didn't I, rather than four?
>
> **Ms. Lasker**: You did give two points rather than four.
>
> **The Court**: Why should I reconsider?
>
> **Ms. Lasker**: Because my understanding is that that's one of the things that the Court of Appeals asked you to review.
>
> **The Court**: Okay. I've reviewed it, I've reconsidered it, and I'm not going to change.

R. 218 (3d Sent. Tr. at 3). Later in the hearing, the district court explained its belief that it lacked authority to reconsider the § 5K1.1 motion:

> In order for the Court to go down below the guidelines on a substantial departure, the Court has to by statute -- and again, the Court of Appeals never mentioned this -- . . . have a motion before it by the government in which the government indicates that the government believes [the assistance] has been substantial and material. The government hasn't done that since the initial downward departure of two. . . .

> [C]ontrary to what I think I see in this Court of Appeals hint, this Court doesn't have the ability to go back and say, Well, you know, I think . . . I made a mistake the first time - - and that's not good. That just isn't good jurisprudence. This Court had everything before it [at the first sentencing].

*Id.* at 21–22. The district court also listened to a reading of a letter from Gapinski, who waived his appearance. In the letter, Gapinski explained that his fellow inmates view him as a snitch and he fears being "checked in," which "means that other inmates want to run [the prisoner] off the compound" and results in the prisoner being sent to the "hole." *Id.* at 7. The district court, however, said that making himself available to testify was "just part of [Gapinski's] plea agreement." *Id.* at 22–23. The district court found that a proffer of testimony is less substantial than trial testimony.

Next, the district court declined to reduce Gapinski's sentence based on his diminished capacity due to ADHD and his tendency to self-medicate with marijuana. The district court had previously denied a request for funds for expert evaluation because "this limited remand is not a competency issue." R. 207 (Order Denying Request for Authorization of Expert Services). At sentencing, the district court found that there was no "clinical analysis" confirming that Gapinski has ADHD and no "nexus" between having ADHD and growing marijuana. R. 218 (3d Sent. Tr. at 19). It therefore declined to vary downward on account of ADHD.

Finally, Gapinski raised the issue of codefendent disparities. His codefendant, Michael Jonathan Vinson, had orchestrated the marijuana-growing operation from state prison, while Gapinski organized the activity outside of prison. Vinson was still serving a four-to-twenty-year state sentence when the federal district court sentenced Vinson on this conspiracy to manufacture marijuana. Vinson had 21 criminal history points, while Gapinski had 14. Both numbers fall within

Criminal History Category VI. Additionally, both defendants were career offenders under U.S.S.G. § 4B1.1, which mandates the use of Criminal History Category VI. The government filed a § 5K1.1 motion for Gapinski, but not for Vinson. As a result, Gapinski's adjusted offense level was 29, while Vinson's was 31. Both defendants received sentences of 120 months, but Gapinski argued that his sentence should be shorter than Vinson's. The district court disagreed for two reasons. First, the district court found no substantial difference between Vinson and Gapinski based on their "extensive criminal records" and "their behavior in this particular conspiracy." *Id.* at 25–26. Second, Vinson's federal sentence will run consecutively with his unrelated state sentence. "So if we're talking about who got the greatest sentence on this, . . . Mr. [Vinson] will in all likelihood have served one or two or three or four years longer when he is released on supervised release than" Gapinski will have served. *Id.* at 24. The district court concluded that the § 3553(a) factors "make[] this sentence reasonable under the circumstances." *Id.* at 27.

## II.  DISCUSSION

**A.  Substantial Assistance**[1]

This court's prior opinion held "that the district court . . . erred by improperly looking to the possibility of a post-sentencing reduction under Rule 35(b) in considering the § 5K1.1 motion." *Gapinski II*, 561 F.3d at 477.  Consequently, the district court was required to consider the § 5K1.1 motion afresh at the third sentencing.  Instead, the district court erroneously asserted that it lacked authority to follow the Sixth Circuit's instruction:  "contrary to what I think I see in this Court of Appeals hint, this Court doesn't have the ability to go back and say, Well, you know, I think . . . I made a mistake the first time."  R. 218 (3d Sent. Tr. at 22).  The Sixth Circuit already held that the district court "made a mistake the first time," thus giving the district court both the ability and the obligation to reconsider its ruling.

---

[1]As it did on Gapinski's last appeal, the government objects to this court reviewing the extent of the district court's downward departure.  Our review is proper for the same reason that it was during the last appeal:

> It is true that we ordinarily do not have jurisdiction to evaluate the extent of a § 5K1.1 departure.  However, when, as here, the district court looked to the possibility of a post-sentencing motion under FED.R.CRIM.P. 35 in ruling on the government's § 5K1.1 motion, we have jurisdiction to determine whether a district court's reduction of a sentence represents the exercise of discretion envisioned by USSG § 5K1.1.  Further, Gapinski asserted his substantial-assistance argument as a ground for either a Guidelines-based downward *departure* or a *variance* pursuant to the § 3553(a) factors.  Thus, even if the rule precluding review of the extent of a downward departure were applicable here, that rule would not preclude this court from reviewing the district court's consideration—or lack thereof—of a request for a *variance* based upon the § 3553(a) factors or the overall reasonableness of the sentence.

*Gapinski II*, 561 F.3d at 475 n.3 (internal quotation marks and citations removed).

Relatedly, the district court incorrectly stated that, "to go down below the guidelines on a substantial departure, the Court has to by statute -- and again, the Court of Appeals never mentioned this -- . . . have a motion before it by the government in which the government indicates that the government believes it has been substantial and material. The government hasn't done that since the initial downward departure of two." *Id.* at 21. It is irrelevant whether the government provided a second motion because the district court was obligated to revisit the first motion. Even though "the government has said here . . . that [it] does not believe that there was that *additional* material and substantial cooperation" after the second sentencing, *id.* (emphasis added), Gapinski's original assistance may justify a four-level departure when it is not improperly minimized by anticipating a potential Rule 35(b) motion. In fact, in its original § 5K1.1 motion, the government itself sought a four-level departure due to Gapinski's earlier assistance. R. 76 (Gov. 12/14/05 Mot. for Downward Departure at 2).

Although *departures* under § 5K1.1 require a motion from the government, *variances* do not. *United States v. Blue*, 557 F.3d 682, 687 (6th Cir. 2009). A district court commits procedural error at sentencing if it does not explain its reasons "to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision making authority." *United States v. Lalonde*, 509 F.3d 750, 769–70 (6th Cir. 2007) (internal quotation marks omitted). Here, the district court did not adequately consider the request for a variance or provide a reasoned basis for denying it. Rather, the district court insisted that it lacked authority to reexamine Gapinski's assistance without a government motion, omitted substantial assistance from

8

its discussion of § 3553(a) factors, and failed to respond when Gapinski's counsel pointed out this error.

The government argues that the district court adequately explained why it found Gapinski's assistance insubstantial because the district court stated that

> there is no foundation for [a shorter sentence] legally on the representations that Mr. Gapinski feared for his life because he came back out of the facility back to this area; never gave testimony, but was willing to; and then went back to his facility. That's just part of his plea agreement.

R. 218 (3d Sent. Tr. at 22–23); *see also id.* at 30 (statement of Assistant U.S. Attorney that "I just don't see how he has suffered any different[ly] than any other defendant who makes the choice to cooperate."). The district court misunderstood the law. Representations about the "danger or risk of injury . . . resulting from [Gapinski's] assistance" are facts that the district court should consider. U.S.S.G. § 5K1.1(a). Standing ready to testify justifies a § 5K1.1 departure when the defendant suffers as a result and the codefendant pleads guilty. *Gapinski II*, 561 F.3d at 476. There is no binding authority to the contrary. *See* U.S.S.G. § 5K1.1 cmt. (recognizing that "a broad spectrum of conduct" can make assistance substantial); *cf. United States v. Melton*, 930 F.2d 1096, 1098–99 (5th Cir. 1991) (holding that, when the government promises a § 5K1.1 motion rather than reserving discretion, it must file the motion if the defendant "stood ready to perform but was unable to do so" because codefendants' guilty pleas obviated the need for trial testimony). *But see United States v. Stewart*, 509 F.3d 450, 453 (8th Cir. 2007) ("A substantial assistance reduction is judged by the degree and quality of the assistance actually provided, not the defendant's willingness to do more and inability to do so." (internal quotation marks omitted)). Nothing in § 5K1.1 diminishes the

substantiality of assistance based on the existence of a plea agreement. "In many plea agreements," including Gapinski's, "the government refers to the possibility of a § 5K1.1 motion but ultimately reserves unilateral discretion to determine whether the motion is appropriate." *United States v. Lukse*, 286 F.3d 906, 909 (6th Cir. 2002); *see also* R. 58 (Plea Agreement ¶ 7). This practice shows that the inclusion of a cooperation clause in a plea agreement in no way precludes a § 5K1.1 departure, and is instead a common factual predicate for a § 5K1.1 departure. Finally, other portions of the transcript make clear that the district court was not seriously reconsidering the § 5K1.1 motion. The district court emphasized that it had "already ruled" on the issue and, upon being told that the Sixth Circuit instructed the district court to reconsider, immediately said simply "Okay. I've reviewed it, I've reconsidered it, and I'm not going to change." R. 218 (3d Sent. Tr. at 3).

The district court erred at the first sentencing by analyzing the § 5K1.1 motion with a view toward the possibility of a Rule 35(b) motion. It replicated that error at the third sentencing by relying on its original ruling. We therefore **REMAND** the case for resentencing. On remand, the district court must rule on the government's original § 5K1.1 motion for a four-level departure. It must not rely on already having decided the issue, nor should it discount Gapinski's assistance based on current or prior potential for a Rule 35(b) motion. It should consider all of the assistance that Gapinski provided, including Gapinski's move between prisons and resulting danger, but also the earlier assistance that the government itself deemed substantial enough for a four-level departure. In addition, the district court must consider Gapinski's argument for a variance based on substantial assistance.

**B.** *Pepper*

### 1. Post-Sentencing Rehabilitation

Based on then-binding circuit precedent, this court's prior opinion concluded, without the benefit of the Supreme Court's decision in *Pepper*, that the district court could not vary downward from the Guidelines range based on Gapinski's post-sentencing rehabilitation efforts. *Gapinski II*, 561 F.3d at 474 (citing *United States v. Worley*, 453 F.3d 706, 707 (6th Cir.), *cert. denied*, 549 U.S. 982 (2006)). While Gapinski's case was awaiting oral argument on the present appeal, the Supreme Court in *Pepper* abrogated *Worley*. *Pepper* held that, "when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range." 131 S. Ct. at 1241. *Pepper* extended the holding of *Booker* to invalidate the limit on post-sentencing considerations contained in 18 U.S.C. § 3742(g)(2), thereby stating a new constitutional rule in the same way that *Booker* did. *Pepper*, 131 S. Ct. at 1244 ("We did not expressly mention § 3742(g)(2) in *Booker*, but the rationale we set forth in that opinion for invalidating §§ 3553(b)(1) and 3742(e) applies equally to § 3742(g)(2). . . . [A]s with the provisions in *Booker*, the proper remedy here is to invalidate § 3742(g)(2)." (footnote omitted)).

If a defendant's case is on direct appeal when the Supreme Court articulates a new constitutional rule, we apply that new rule to the defendant's case. *See United States v. Booker*, 543 U.S. 220, 268 (2005) (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). We apply the new rule

11

even when, as occurred here, a prior opinion in Gapinski's case rejected the rule that the Supreme

Court later adopted. *Spiegla v. Hull*, 481 F.3d 961, 964 (7th Cir. 2007); *EEOC v. K-Mart Corp.*, 796

F.2d 139, 146 (6th Cir. 1986). We therefore **REMAND** to the district court to decide the effect of

Gapinski's post-sentencing rehabilitative efforts on his sentence.[2]

### 2. General Remands

*Pepper* held that a general remand leaves the district court free to sentence de novo. As the

Eighth Circuit did in *Pepper*, we issue a general remand. "A criminal sentence is a package of

sanctions that the district court utilizes to effectuate its sentencing intent." *Pepper*, 131 S. Ct. at

1251 (internal quotation marks omitted). "[T]he delicate balancing that occurs in the sentencing

process in light of the complexity of the Sentencing Guidelines leads this court to believe that limited

remands are less likely to be desirable or effective when multiple issues require reconsideration."

*United States v. Campbell*, 168 F.3d 263, 268 (6th Cir. 1999). The multiple, interrelated issues in

this case make a general remand appropriate. The two-level reduction that the district court already

granted for substantial assistance is closely intertwined with any yet-to-be-assessed additional

reduction for substantial assistance. Similarly, the amount by which the original district court judge

---

[2]Even though Gapinski did not argue for a downward variance based on post-sentencing rehabilitation in the current appeal, Gapinski has not waived that argument. "Waiver under Rule 28(a)(5) of the Federal Rules of Appellate Procedure occurs when a party omits an *available* argument." *Spiegla*, 481 F.3d at 964 (emphasis added). The argument for a downward variance based on post-sentencing rehabilitation was not available to Gapinski in the present appeal because he raised it in his second appeal. Prior to the change in law that *Pepper* brought about, "law of the case doctrine barred the defendant[] from raising the issue again." *Id.* Waiver, therefore, does not apply.

varied downward is not "fixed independently" of a downward variance for post-sentencing

rehabilitation or diminished capacity. *Id.* Therefore, we issue a general remand.

**C. Reassignment to a Different District Court Judge**

At oral argument, Gapinski requested that we reassign his case to a different district court

judge in the event that we remand his case for resentencing.

> To determine whether reassignment is necessary, we consider (1) whether the
> original judge would reasonably be expected to have substantial difficulty in putting
> out of his or her mind previously expressed views or findings; (2) whether
> reassignment is advisable to preserve the appearance of justice; and (3) whether
> reassignment would entail waste and duplication out of proportion to any gain in
> preserving the appearance of fairness.

*Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006). All three factors support reassignment

here.

First, the original judge had substantial difficulty setting aside his previously expressed views

about the substantial-assistance departure. "Having reimposed an identical sentence after [one]

remand, the district judge may reasonably be expected to have substantial difficulty ignoring his

previous views during [the next] sentencing proceeding." *United States v. DeMott*, 513 F.3d 55, 59

(2d Cir. 2008). The district court judge who sentenced Gapinski voiced that type of problem, saying,

"Okay. I've reviewed it, I've reconsidered it, and I'm not going to change." R. 218 (3d Sent. Tr. at

3). Moreover, a judge who has "questioned the wisdom of the substantive law" that he or she must

apply is less likely to be able to overcome prior views. *United States v. Torkington*, 874 F.2d 1441,

1447 (11th Cir. 1989). Here, the district court judge refused to follow our prior instructions because

he believed that the instructions would force the district court to engage in activity that "just isn't

good jurisprudence." R. 218 (3d Sent. Tr. at 22). He also stated that, "contrary to what I think I see in this Court of Appeals hint, this Court doesn't have the ability to go back and say, Well, you know, I think . . . I made a mistake the first time . . . ." *Id.* Because the district court judge was reluctant to follow our prior remand instructions, we have little reason to think that another remand would cause the judge to disavow his previously expressed views about this case.

Second, reassignment will preserve the appearance of justice. This criterion is satisfied because "[t]he district judge's previously expressed views appear too entrenched to allow for the appearance of fairness on remand." *United States v. Ressam*, 629 F.3d 793, 840 (9th Cir. 2010). In addition, reassignment will ensure that Gapinski's sentence is the product of a reasoned procedure. The original district court judge "want[ed] the record to reflect [that] . . . the whole reason we're back here on [this case] is the length of the sentence. I don't see any other reason for that. Clear. It's clear that once you strip away the verbiage in the Court of Appeals, that's what they're concerned with too." *Id.* at 15. To the contrary, our opinion held that procedural defects marred Gapinski's second sentencing hearing. Reassignment will protect the appearance and actuality of procedural justice.

Finally, any lost efficiency is not out of proportion to the gain in preserving the appearance of fairness. This case is not a large-scale controversy with a "complex factual record." *Hamad v. Woodcrest Condominium Ass'n*, 328 F.3d 224, 239 (6th Cir. 2003). In addition, when issues have already been remanded once to no avail, "reassignment provides an opportunity to reduce waste and move the case toward definitive resolution." *John B. v. Goetz*, 626 F.3d 356, 365 (6th Cir. 2010).

Because the issue of post-sentencing rehabilitation is not one that the original judge has had the occasion to consider, no efficiency is lost or gained on that issue.

We acknowledge that reassignment is "an extraordinary power" that we should exercise "infrequently and with the greatest reluctance." *Solomon*, 467 F.3d at 935. This case, however, represents an extraordinary circumstance in which reassignment is appropriate.

**D. Remaining Issues**

We leave the questions of codefendent disparities and funds for psychiatric evaluation to the district court judge who will be assigned to this case.[3]

First, the district court sentenced Gapinski and codefendant Vinson to the same term of imprisonment even though Gapinski has fewer criminal-history points and a lower adjusted offense level. The unwarranted-disparities factor in § 3553(a)(6) relates to "*national* disparities between defendants with similar criminal histories convicted of similar criminal conduct—not disparities between codefendants." *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir.), *cert. denied*, *Marlowe v. United States*, 129 S. Ct. 450 (2008). "A district judge, however, *may* exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence." *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007). On remand, the district court may choose whether to exercise its discretion in this fashion.

---

[3]Because we are remanding for resentencing, it is unnecessary for us to decide the issue raised by Gapinski that the district court erred by evaluating whether Gapinski's sentence was "reasonable," which is the appellate standard of review. *See United States v. Bolden*, 479 F.3d 455, 467 (6th Cir.), *cert. denied*, 552 U.S. 872 (2007).

Second, our opinion in *Gapinski II* instructed the district court to "consider Gapinski's arguments for a lower sentence based upon alleged diminished capacity due to ADHD." *Gapinski II*, 561 F.3d at 478. "[A]n indigent defendant may obtain authorization for investigative, expert, or other services under 18 U.S.C. § 3006A(e)(1) upon a demonstration that (1) such services are necessary to mount a plausible defense, and (2) without such authorization, the defendant's case would be prejudiced." *United States v. Howard*, 621 F.3d 433, 447 (6th Cir. 2010) (internal quotation marks omitted). Section 3006A(e)(1) applies in the sentencing context. *United States v. Abreu*, 202 F.3d 386, 389–90 (1st Cir. 2000); *see also United States v. Clark*, 385 F.3d 609, 617–18 (6th Cir. 2004). Gapinski admits that he has no basis for a *departure* due to diminished capacity because he can "absorb information in the usual way and . . . exercise the power of reason." *United States v. Osoba*, 213 F.3d 913, 916 (6th Cir. 2000) (internal quotation marks omitted). However, at least one district court has *varied* downward on account of untreated ADHD. *United States v. Patzer*, 548 F. Supp. 2d 612, 617–18 (N.D. Ill. 2008). We leave to the district court on remand the decision whether to allocate funds for a psychiatric evaluation.

### III. CONCLUSION

By refusing to reconsider its ruling on the § 5K1.1 motion for a departure for substantial assistance, the district court failed to rectify a procedural problem from the second sentencing hearing. In addition, the Supreme Court's decision in *Pepper* entitles Gapinski to have the district court determine whether his post-sentencing rehabilitation efforts justify a downward variance. We

16

therefore **VACATE** Gapinski's sentence and **REMAND** for de novo resentencing.  We also

**GRANT** Gapinski's request that the case be reassigned to a different district court judge.