RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0131p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
—————————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

          *v.*                                              No. 08-1193

JAMES EDWARD GAPINSKI,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 04-00120—Robert Holmes Bell, District Judge.

Argued: March 10, 2009

Decided and Filed: April 2, 2009

Before: BATCHELDER, DAUGHTREY, and MOORE, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:** Anne T. Lasker, LAW OFFICE, Grand Rapids, Michigan, for Appellant. B. René Shekmer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Anne T. Lasker, LAW OFFICE, Grand Rapids, Michigan, for Appellant. B. René Shekmer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

     MOORE, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. BATCHELDER, J. (p. 16), delivered a separate concurring opinion.

—————————————

## OPINION

—————————————

     KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant James Edward Gapinski ("Gapinski") pleaded guilty to one count of conspiracy to manufacture more than 100 marijuana plants, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(vii). He now appeals the 120-month sentence imposed by the district court upon resentencing after

1

we vacated his original 156-month sentence and remanded for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005). Gapinski argues that the district court's sentencing determination is procedurally unreasonable because the district court failed to consider and respond to his arguments for a lower sentence. Because the record does not show that the district court considered and explained its reasons for rejecting Gapinski's nonfrivolous argument for a lower sentence based upon substantial assistance to the government, we **VACATE** Gapinski's sentence and **REMAND** to the district court for resentencing.

## I. BACKGROUND

In May 2004, the Michigan Department of Corrections ("MDOC") provided police investigators with intercepted e-mail, mail, and telephone correspondence between Michael Vinson ("Vinson"), an MDOC inmate, and his girlfriend Suzanne Brodeur ("Brodeur"). The correspondence indicated that Vinson had instructed Brodeur how to grow marijuana and that Brodeur, with the assistance of others, had set up a marijuana-grow operation in the basement of her residence in Lansing, Michigan. When additional intercepted e-mails indicated that Brodeur planned to move from the house and take some of the marijuana plants with her, officers went to the residence on May 30, 2004, where they were met by Brodeur and denied entry. Officers then requested a search warrant and began surveillance of the house. At around 3:18 p.m., Gapinski arrived in a gray van and entered the house. At the same time, codefendant Dale Bemiss ("Bemiss") and a woman arrived at the house in a green Mercury. Bemiss made several trips back and forth from the house, loading what turned out to be equipment used to grow marijuana into the trunk of his car. Bemiss then drove away and was stopped and arrested some distance from the house. At around 5:05 p.m., officers entered the house to execute a search warrant and found Gapinski and Brodeur inside. Police seized 387 marijuana plants and marijuana-grow equipment, including grow lights, fertilizer, and fans. The officers concluded that Gapinski, Bemiss, and Brodeur were in the process of removing the marijuana grow-operation from the house. Joint Appendix ("J.A.") at 146-47 (Presentence Investigation Report ("PSR") at ¶¶ 12-19).

Upon questioning by police, Gapinski admitted that he and Bemiss had been helping Brodeur to dismantle the grow operation and to remove the marijuana plants from the house. Gapinski also told officers that he, Brodeur, and two coconspirators, Joseph Hill ("Hill") and

Steven Mayer ("Mayer"), had agreed to share in the payment of rent and utilities at the house in order to set up a marijuana-grow operation. J.A. at 147 (PSR ¶¶ 21-23).

Gapinski was subsequently re-interviewed by police on July 24, 2004, and described his involvement in the grow operation in more detail. Gapinski reported that he and Vinson had discussed growing marijuana while the two were incarcerated together at the Shiawassee County Jail. According to Gapinski, Vinson asked him to arrange a marijuana-grow operation with Vinson's girlfriend Brodeur, who was sick and unable to work, in order to provide her with an inexpensive place to live and with extra income. Gapinski explained that after his release from jail he entered into an agreement with Brodeur, Hill, and Mayer to grow marijuana. Under the agreement, the four contributed rent and other expenses for a rental house at which the marijuana was grown and shared responsibility for taking care of the marijuana plants, while Brodeur lived at the house and watered the plants. Gapinski also admitted that he brought fifty marijuana plants to the house in March 2004. J.A. at 148-50 (PSR at ¶¶ 28-33, 42-43).

On June 8, 2004, a grand jury indicted Gapinski, Vinson, Brodeur, and Bemiss for conspiracy to manufacture more than 100 marijuana plants, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(vii). On September 27, 2004, Gapinski pleaded guilty pursuant to a plea agreement.

The PSR for Gapinski calculated a base offense level of 34 pursuant to the career-offender provision of Guideline § 4B1.1 because Gapinski had two prior convictions for delivery/manufacture of marijuana. That was reduced by three levels for acceptance of responsibility pursuant to Guideline § 3E1.1, for a total offense level of 31. Because of Gapinski's career-offender status, the PSR also determined his criminal history to be category VI.[1] The PSR thus determined the Guideline range for Gapinski to be between 188 and 235 months of imprisonment.

---

[1] Even without application of the career-offender guideline, the PSR calculated Gapinski's criminal history to be category VI because Gapinski had 14 criminal history points.

Prior to sentencing, the government moved for a four-level downward departure pursuant to Guideline § 5K1.1 based upon Gapinski's substantial assistance. The government explained that Gapinski had given a proffer concerning his involvement in the marijuana-grow conspiracy and had provided significant information on the roles played by his three codefendants as well as the two other coconspirators, Hill and Mayer. Because of "Gapinski's early cooperation and willingness to testify," the government noted, each of Gapinski's three codefendants pleaded guilty rather than proceeding to trial, and coconspirators Hill and Mayer were indicted for their role in the conspiracy. J.A. at 44 (Gov't Mot. for Downward Departure at 2). The government further explained that Gapinski had agreed to testify against Hill and Mayer should they decide to go to trial.

On December 21, 2004, Gapinski filed a sentencing memorandum. Gapinski objected to the PSR's addition of four levels to his base offense level pursuant to Guideline § 3B1.1 based upon the finding that Gapinski was the primary organizer of the conspiracy. Gapinski argued that Vinson, though in jail, organized and controlled the marijuana-grow operation through his girlfriend, Brodeur. Separately, Gapinski objected pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to the enhancement of his base offense level to 34 as required by the career-offender guideline.

The district court held a sentencing hearing on December 22, 2004. The court agreed that Gapinski was not the primary organizer or supervisor of the conspiracy, but concluded that Gapinski "had a management activity of a subsumed nature such that a two-point aggravation is probably more reflective of his role." J.A. at 97 (Sent. Hr'g Tr. 12/22/04 at 5). Consequently, the district court rejected the four-level adjustment recommended by the PSR under Guideline § 3B1.1(a) and imposed instead a two-level upward adjustment under Guideline § 3B1.1(c).[2] Next, the district court rejected Gapinski's objection to the career-criminal enhancement based upon *Blakely* and

---

[2] As the government pointed out at the sentencing hearing, the leadership adjustment did not affect Gapinski's ultimate offense level, because Gapinski's base offense level was set separately at 34 pursuant to the career-offender guideline.

*Apprendi* and concluded that because of his two prior felony convictions for delivery/manufacture of marijuana, Gapinski was a career offender under Guideline § 4B1.1.

The district court then considered the government's motion for a downward departure for substantial assistance pursuant to Guideline § 5K1.1. The court, however, granted only a two-level downward departure, rather than the four-level departure requested by the government. The court explained that Gapinski had not yet testified in the pending cases against coconspirators Hill and Mayer, but should he do so the government could return to the court to seek a further sentence reduction by filing a motion pursuant to FED. R. CRIM. P. 35(b).

Based upon an adjusted offense level of 29 and a criminal history category of VI, the then-mandatory Guidelines called for a sentence of 151 to 188 months. The district judge sentenced Gapinski to 156 months, near the bottom of the Guidelines range, explaining that he credited Gapinski for being honest before the court, that he believed Gapinski had "hit the bottom," and that Gapinski had "a family out there that's going to help [him]." J.A. at 109 (Sent. Hr'g Tr. 12/22/04 at 17). The court also announced an "alternate sentence" of 120 months, which the court intended to impose in the event that the Guidelines did not apply. *Id.* Additionally, the district court imposed a five-year term of supervised release, a $5,000 fine, and a special assessment of $100. The court also recommended that while in prison Gapinski obtain a General Equivalency Diploma, participate in the 500-hour residential drug-treatment program, and pursue educational opportunities to prepare for a trade or job.

While Gapinski's appeal of his sentence was pending before this court, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005). Both parties agreed that the district court's pre-*Booker* sentence on December 22, 2004, applying the Guidelines as mandatory, was erroneous. The parties also agreed that there was no mechanism to give effect to the "alternate sentence" of 120 months announced by the district court. Accordingly, on June 20, 2007, we disposed of the case without oral argument, vacating Gapinski's sentence and remanding to the district court for

resentencing "in accordance with *Booker* and its progeny, and in light of any other relevant factors."  *United States v. Gapinski*, 226 F. App'x 592 (6th Cir. 2007) (unpublished opinion).

Prior to resentencing, Gapinski filed a "Motion for Downward Departure(s) or Variance(s)" and a "Brief in Support of Motion for Downward Departures or Variance" on November 21, 2007, requesting a downward departure or a variance.  J.A. at 64-65 (Gapinski Sent. Mot. 11/21/07); J.A. at 66-75 (Gapinski Sent. Br. 11/21/07).  Among other things, Gapinski argued for a downward departure or a variance because:  (1) his criminal history category, though correctly calculated, overstated his criminal history; (2) he suffered from diminished capacity caused by Attention Deficit Hyperactivity Disorder ("ADHD"), which was diagnosed for the first time after his initial sentencing; (3) he undertook rehabilitative efforts while in prison, as recommended by the sentencing court; (4) he was relatively less culpable and had a less extensive criminal history than codefendant Michael Vinson (who was sentenced to 120 months); (5) he provided further assistance to the government subsequent to his original sentencing.

The district court held a resentencing hearing on January 18, 2008.  At that hearing, Gapinski's counsel did not reiterate the arguments made in Gapinski's motion and brief, telling the district court that "I'm sure the Court has read the sentencing memorandum, so I won't repeat all the arguments."  J.A. at 134 (Sent. Hr'g Tr. 1/18/08 at 6).  Instead, Gapinski's counsel raised only one of those arguments at the hearing, asking the district court to consider granting a lower sentence because of Gapinski's further substantial assistance to the government.  Gapinski's counsel explained that, subsequent to the original sentencing hearing, Gapinksi had been brought from prison and made available to testify against coconspirator Hill, leading Hill to plead guilty instead of proceeding to trial.  Gapinski's counsel concluded by asking the district court to "consider that and the other factors which are set out in the memorandum."  *Id.*

After hearing a brief allocution from Gapinski, the district court proceeded to discuss the 18 U.S.C. § 3553(a) factors.  First, the district court considered the "nature and circumstances of this offense" and noted that "[t]his was what is called in the

vernacular a marijuana grow operation of some magnitude, but certainly not part of a larger conspiracy of which this Court sees a fair amount." J.A. at 135 (Sent. Hr'g Tr. 1/18/08 at 7). The district court next considered the "history and characteristics" of Gapinski, reciting Gapinski's numerous past drug convictions and noting that Gapinski was on probation for a conviction for delivery/manufacture of marijuana at the time of the instant offense. The district court concluded that Gapinski had shown "a long-term pattern, uninterrupted, of criminal conduct. Kind of the same kind of criminal conduct uninterrupted." J.A. at 136 (Sent. Hr'g Tr. 1/18/08 at 8). After stating that Gapinski was "intelligent," "comes from a good family," and was "not retarded or anything like that," the court added that "one can ride off on the horse of, well, he's been addicted and he just can't help it, but that's stupid. That's contrary to logic, and if that were true, then we wouldn't have criminal liability." J.A. at 137 (Sent. Hr'g Tr. 1/18/08 at 9).

The district court then addressed other § 3553(a) factors and imposed a sentence of 120 months of imprisonment:

> In light of the seriousness of this offense and to provide just punishment, and obviously to protect the public, but to also recognize that Mr. Gapinski has undertaken and has benefited from educational and correctional treatment, and that in fact the sentence imposed should be sufficient, but not greater than necessary to comply with the purposes of the federal statute requirement and to afford again here an adequate deterrent to Mr. Gapinski for this kind of behavior, the Court believes that 120 months in the custody of the Federal Bureau of Prisons is a sufficient sentence. Keeping in mind, of course, the fact that the guidelines are guidelines, and this is obviously within that generalized range of a guideline, but that the history and characteristics of Mr. Gapinski and the likelihood of recidivism is very high, and a lengthy sentence that gives much more time to orient himself to law-abiding behavior and acquire a greater level of education and skills will in fact be to the benefit of not only Mr. Gapinski, but to the public in general.

J.A. at 138 (Sent. Hr'g Tr. 1/18/08 at 10). The district court also reimposed a five-year term of supervised release, a $5,000 fine, and a special assessment of $100. After announcing the sentence, the court asked Gapinski's counsel, "Anything else for the record, Ms. Lasker?" J.A. at 139 (Sent. Hr'g Tr. 1/18/08 at 11). Gapinski's counsel

responded, "I have nothing else, Your Honor." *Id.* Gapinski filed a timely notice of appeal.

## II. ANALYSIS

Gapinski argues that the district court's sentencing determination was procedurally unreasonable. We review the sentence imposed by the district court for reasonableness. *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008). Reasonableness review has two components: procedural and substantive. *See Gall v. United States*, — U.S. —, 128 S. Ct. 586, 597 (2007). A district court commits a significant and reversible procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* at 597.

As a preliminary matter, the government argues that this court should review the district court's sentencing determination only for plain error. In *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), this court set forth the following rule to ensure that plain-error review applies only when the parties fairly were given the opportunity to object to the sentence pronounced by the district court:

> [D]istrict courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, [must] ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised. If the district court fails to provide the parties with this opportunity, they will not have forfeited their objections and thus will not be required to demonstrate plain error on appeal.

*Id.* at 872-83 (footnote omitted); *see also United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir.) (en banc) (applying *Bostic* rule in the context of a procedural reasonableness challenge), *cert. denied*, 129 S. Ct. 68 (2008). This court has previously "made clear that '[a] district court can satisfy the requirements of the *Bostic* rule only by clearly asking for objections to the sentence that have not been previously raised.'" *United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) (quoting *United States v. Clark*, 469

F.3d 568, 570 (6th Cir. 2006)).  Here, the district court asked Gapinski's counsel, "Anything else for the record, Ms. Lasker?" J.A. at 139 (Sent. Hr'g Tr. 1/18/08 at 11). In *Thomas*, we held that a very similar question by the district court was not sufficient to satisfy the *Bostic* rule.  498 F.3d at 340 (concluding that the *Bostic* rule was not satisfied when the district court asked, "Do you have anything further for the record, Mr. Canady?").  Accordingly, Gapinski's failure to raise any of his arguments as objections below does not trigger plain-error review.

In order for a district court's sentencing determination to be procedurally reasonable, a "sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2468 (2007).  The question in each case "is whether '[t]he record makes clear that the sentencing judge listened to each argument,' 'considered the supporting evidence,' was 'fully aware' of the defendant's circumstances and took 'them into account' in sentencing him." *Vonner*, 516 F.3d at 387 (quoting *Rita*, 127 S. Ct. at 2469) (alteration in original).  Although the district court is not required to "give the reasons for rejecting any and all arguments [made] by the parties for alternative sentences," *id.*, for a sentence to be procedurally reasonable, "[w]hen a defendant raises a particular[, nonfrivolous] argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007) (internal quotation marks omitted); *see also United States v. Peters*, 512 F.3d 787, 789 (6th Cir. 2008) ("When the defendant or prosecutor 'presents nonfrivolous reasons for imposing a different sentence,' . . . a sentencing judge should address the 'parties' arguments' and 'explain why he has rejected those arguments.'" (quoting *Rita*, 127 S. Ct. at 2468)).

Gapinski argued for a downward departure from the Guidelines' range or for a variance because of:  (1) the overstatement of his criminal history by the Guidelines scoring; (2) his rehabilitative efforts while in prison; (3) his further assistance and cooperation with the government after his original sentencing; (4) the need to avoid

unwarranted similarities in the sentencing of coconspirators who are not similarly situated; and (5) his diminished capacity caused by ADHD.

We easily dispose of Gapinski's first two arguments. First, the record shows that the district court *did* consider Gapinski's argument that his criminal history category and his career-criminal status overstated the seriousness of his criminal history. Although the district court did not refer expressly to Gapinski's arguments on this point, the court was aware that Gapinski had a criminal history category of VI and discussed Gapinksi's prior convictions at length before concluding that Gapinski had shown a "long-term pattern, uninterrupted, of criminal conduct." J.A. at 132, 136 (Sent. Hr'g Tr. 1/18/08 at 4, 8). Given the ample consideration of Gapinski's criminal history by the district court, we are satisfied that the court adequately considered and rejected this argument for a lower sentence.

Second, Gapinski's argument for a variance based upon his rehabilitative efforts while in prison was an argument that this court has previously rejected. *See United States v. Worley*, 453 F.3d 706, 707 (6th Cir.) (holding that the scope of a *Booker* remand did not permit consideration of a defendant's rehabilitative efforts that postdated the original sentencing), *cert. denied*, 549 U.S. 982 (2006). We therefore cannot say that the sentence was procedurally unreasonable on the basis of this argument.

We are not satisfied, however, that the district court adequately considered Gapinski's argument for a lower sentence based upon his substantial assistance to the government.[3] In his sentencing memorandum and again at the resentencing hearing,

---

[3]The government argues that this issue is unappealable, citing *United States v. Curry*, 536 F.3d 571, 573 (6th Cir.) ("When the district court grants a downward departure for substantial assistance and the defendant's claim on appeal goes only to the extent of the departure, this Court has no jurisdiction over the appeal." (internal quotation marks omitted)), *cert. denied*, 129 S. Ct. 655 (2008). It is true that we ordinarily do not have jurisdiction to evaluate the extent of a § 5K1.1 departure. However, when, as here, the district court looked to the possibility of a post-sentencing motion under FED. R. CRIM. P. 35 in ruling on the government's § 5K1.1 motion, "we have jurisdiction to determine whether a district court's reduction of a sentence 'represents the exercise of discretion envisioned by USSG § 5K1.1.'" *United States v. Ridge*, 329 F.3d 535, 541 (6th Cir. 2003) (quoting *United States v. Bureau*, 52 F.3d 584, 595 (6th Cir. 1995)). Further, Gapinski asserted his substantial-assistance argument as a ground for either a Guidelines-based downward *departure* or a *variance* pursuant to the § 3553(a) factors. Thus, even if the rule precluding review of the extent of a downward departure were applicable here, that rule would not preclude this court from reviewing the district court's consideration—or lack thereof—of a request for a *variance* based upon the § 3553(a) factors or the overall reasonableness of the sentence. *United States v. Wheaton*, 517 F.3d 350, 370 (6th Cir. 2008).

Gapinski asked the district court to consider the additional assistance he provided to the government after his original sentencing on December 22, 2004.  Specifically, Gapinksi made himself available to testify against a coconspirator, Joseph Hill, which led Hill to plead guilty.  Gapinski's sentencing memorandum detailed the nature of this cooperation and asked for an additional two-level downward departure and/or a variance:

> Mr. Gapinski was awaiting transport by the Bureau of Prisons to McKean Correctional Facility when he was pulled from his pod and transported to Michigan.  He was in Michigan ready and available to testify in the trial of Mr. Joseph Hill.  Mr. Hill learned that Mr. Gapinski was available and willing to testify, so he chose to plead guilty.  When Mr. Gapinski was finally transported to McKean his former pod mates, who had been transported to McKean while Mr. Gapinski was in Michigan, made pointed remarks about his delay in arriving.  Inmates who are known to have co-operated with the government are at risk for mistreatment while incarcerated.  Not only is there grapevine gossip within the institution, but "snitches" are tracked on internet accessible data bases.  See the web site "Who's a Rat" www.whosarat.com.
>
> Mr. Gapinski did not testify at trial because the co-conspirator chose to plead guilty, but he did come forward, at further risk to himself, to be available to testify should it have proved necessary.

J.A. at 74 (Gapinski Sent. Br. 11/21/07) (citations omitted).  At the resentencing hearing, the Assistant U.S. Attorney ("AUSA") confirmed that Gapinski's cooperation had led to the indictments of coconspirators Hill and Mayer and that Gapinski had made himself available to testify if those coconspirators had chosen to proceed to trial.

The record in this case does not show that the district court ever considered or explained its reasons for rejecting Gapinski's argument for a lower sentence based on this substantial additional cooperation.  The only indication that the district court even turned its attention to this issue is the following cursory exchange between the AUSA and the district judge:

> The Court:  When was the motion for downward departure based upon cooperation filed?  Do you have that?  I'm just hunting for it.
>
> Ms. Shekmer:  Your Honor, that was filed presentencing.  It was a 5K1.1 motion.
>
> The Court:  Oh, okay, okay.

Ms. Shekmer:  And in that we had already talked about Joseph Hill and Steven Mayer in the original 5K, and if the court will recall from the sentencing, the Court indicated that --

The Court:  Yeah, yeah.

Ms. Shekmer:  -- we would come back if there were testimony in a trial, and of course there wasn't, so we haven't been back.  But I wanted the Court to be aware that ultimately those two people did plead guilty and were convicted.

The Court:  Okay.  Okay.  Okay.  I got it now, okay.  Okay.

J.A. at 133 (Sent. Hr'g Tr. 1/18/08 at 5).  This cursory exchange leaves us uncertain as to whether the district court adequately considered and rejected Gapinski's substantial-assistance argument or whether it misconstrued Gapinski's argument or did not understand that Gapinski sought an additional downward departure or a variance based upon his further cooperation after the original sentencing.  Accordingly, we cannot say that the district court "set forth enough to satisfy [us] that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."  *Rita*, 127 S. Ct. at 2468.

The government suggests that the district court *did* reject Gapinski's substantial-assistance argument at the resentencing hearing, on the ground that Gapinski's testimony against the other coconspirators had ultimately been unnecessary.  We decline, however, to attribute such implicit reasoning to the district court on the thin record before us.  To do so would suggest that the district court penalized Gapinski because of circumstances that were outside of his control.  Gapinski honored his commitment, making himself available to testify and possibly putting himself at risk of retribution for being a "snitch."  Although his testimony was not necessary, Gapinski's cooperation and willingness to testify evidently led to guilty pleas by the two coconspirators.  In substance, Gapinski provided all of the cooperation sought of him by the government, and the government obtained convictions of the two coconspirators because of Gapinski's assistance.

We also note that it was inappropriate for the district court to look to the possibility of a post-sentencing motion under FED. R. CRIM. P. 35 in considering the

government's § 5K1.1 motion at sentencing.[4]  *See Ridge*, 329 F.3d at 541 ("We will

vacate a defendant's sentence and remand for re-sentencing where the district court

'look[ed] to a potential Rule 35 motion' in ruling on a § 5K1.1 motion . . . ." (quoting

*Bureau*, 52 F.3d at 595) (alteration in original)).  The Guidelines require a sentencing

court "'to respond to a § 5K1.1 motion and to then state the grounds for action at

sentencing without regard to future events.'"  *Id.* at 542 (quoting *Bureau*, 52 F.3d at

595).  Although "[a] district court's mere mention of possible future cooperation or the

possibility of filing a Rule 35 motion alone will not invalidate the district court's ruling

on a motion for a downward departure under § 5K1.1," "the prospect of Rule 35(b) relief

in the future cannot be allowed to alter or influence the decisions of the prosecution, or

the deliberations of the court, at sentencing."  *Id.* (internal quotation marks omitted).  At

the original sentencing hearing, the government asked for a four-level downward

departure under § 5K1.1.  Noting that Gapinski had not yet provided any testimony

against his coconspirators, the court at that time granted only a two-level downward

departure in anticipation of a later Rule 35(b) motion:

> [T]he court believes that a two-point downward departure is sufficient
> with the caveat that I would anticipate [the AUSA], using her normal
> practice that if in fact testimony is necessary from Mr. Gapinski and in
> fact does come forward, that she will be back here or she can come back

---

[4]Rule 35(b) provides as follows:

(1)  **In General.**  Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.

(2)  **Later Motion.**  Upon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved:

(A)  information not known to the defendant until one year or more after sentencing;

(B)  information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing; or

(C)  information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after sentencing and which was promptly provided to the government after its usefulness was reasonably apparent to the defendant.

FED. R. CRIM. P. 35(b).

here with a 35(b) motion for sentence reduction at a later time should that occur.

J.A. at 101 (Sent. Hr'g Tr. 12/22/04 at 9).  Further, the cursory exchange between the AUSA and the district court at the resentencing hearing suggests that the district court continued to view any further substantial-assistance reduction as entirely dependent upon the government's decision whether to file a Rule 35 motion.**5**  We conclude, therefore, that the district court also erred by improperly looking to the possibility of a post-sentencing reduction under Rule 35(b) in considering the § 5K1.1 motion.

In sum, we conclude that the context and the record in this case do not "'make[] clear that the sentencing judge listened to'" Gapinski's argument for a lower sentence based upon substantial assistance, "'considered the supporting evidence,' was 'fully aware' of the defendant's circumstances and 'took them into account' in sentencing him."  *Vonner*, 516 F.3d at 387 (quoting *Rita*, 127 S. Ct. at 2469).  Accordingly, we conclude that Gapinski's sentence was procedurally unreasonable and therefore vacate Gapinski's sentence and remand for resentencing.  *See, e.g.*, *Peters*, 512 F.3d at 788 (vacating sentence when defendant's "Statement of Reasons" raised "a number of mitigating factors" concerning why he should receive a "time-served" sentence, and the district court made only "a cursory statement acknowledging [defendant's] arguments, [and] did not address the defendant's 'time-served' argument or the mitigating factors"); *Thomas*, 498 F.3d at 341 (vacating sentence when defendant's "sentencing memorandum raised a number of arguments regarding application of the § 3553(a) factors, but those arguments went unmentioned and unaddressed, save the general statement by the district court that it had received, read, and understood the sentencing memorandum").  On remand, the district court should also consider Gapinski's arguments for a lower

---

**5**The resentencing hearing included the following colloquy with the AUSA about the § 5K1.1 motion:

> Ms. Shekmer: -- we would come back [on a Rule 35 motion] if there were testimony in a trial, and of course there wasn't, so we haven't been back.  But I wanted the Court to be aware that ultimately those two people did plead guilty and were convicted.

> The Court: Okay.  Okay.  Okay.  I got it now, okay.  Okay.

J.A. at 133 (Sent. Hr'g Tr. 1/18/08 at 5).

sentence based upon alleged diminished capacity due to ADHD and the need to avoid unwarranted similarities in the sentences imposed upon codefendants who are not similarly situated.

## III.  CONCLUSION

For the reasons explained above, we **VACATE** Gapinski's sentence and **REMAND** to the district court for resentencing in accordance with this opinion.

---

**CONCURRENCE**

---

ALICE M. BATCHELDER, Circuit Judge, concurring.  I concur in the lead opinion, and I write separately only with regard to the government's argument that our review should be for plain error.  Although I think there are good reasons to be skeptical of this circuit's talismanic approach to what we now refer to as "the *Bostic* rule," I agree that under our precedents, the district court that deviates from the language of *Bostic* does so at its peril.  That said, it is important to note here that the district court not only did not ask the literal *Bostic* question — i.e., whether the parties have any objections to the sentence "that have not previously been raised" — the district court did not apparently give Gapinski's counsel any opportunity to respond effectively to the question the court *did* ask.  According to the transcript of the resentencing hearing, the closing colloquy went like this:

> THE COURT:  Anything else for the record, Ms. Lasker [counsel for defendant]?
>
> MS. LASKER:  Can I have just a moment, Your Honor?
>
> THE COURT:  Very well.  That's all for the record, then.  Thank you.
>
> MS. LASKER:  I have nothing else, Your Honor.

At oral argument, Gapinski's counsel advised that she was not in fact given the "moment" she requested; rather, the court immediately ended the proceedings.  Certainly under these circumstances, we cannot review only for plain error.