NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0643n.06

No. 13-6498

FILED
Aug 18, 2014
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| JEFFERY GARNER, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant - Appellant. | ) | |

**BEFORE: GIBBONS, SUTTON, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge**. Jeffrey Garner pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and was sentenced to 105-months' imprisonment. Garner appeals, arguing that his sentence is procedurally unreasonable because the district court did not adequately explain its decision and substantively unreasonable because the court provided no explanation of how an upward departure will further the objectives of § 3553(a). Because the district court provided adequate reasons for the upward departure, we AFFIRM.

I.

On July 2, 2012, while monitoring vehicles traveling on Interstate 40, officers with the West Tennessee Judicial Violent Crime and Drug Task Force initiated a seat-belt-violation stop of one of two vehicles traveling closely together. PSR ¶ 5. The driver did not immediately respond and the vehicles continued to drive for a while before stopping. PSR ¶¶ 5–6. When

stopped, the detaining officer ordered the offending driver and Garner, the passenger, to exit the vehicle. PSR ¶ 6. The officer saw a .357 caliber pistol and discovered marijuana in the vehicle. *Id.* An indictment charged Garner with knowing possession of a firearm in violation of § 922(g)(1). PID 2–3. Garner agreed with the government that he would plead guilty to being a felon in possession of a firearm and that the government would recommend that he receive full credit for acceptance of responsibility and recommend a sentence at the low end of the advisory guidelines range. PID 44–48.

In calculating the applicable sentencing range, the PSR reported that Garner had 25 criminal history points, placing him in category VI, PSR ¶¶ 47–48, and noted that this score might justify an upward departure or variance. PSR ¶¶ 114–17. Garner had five prior convictions of possessing a controlled substance, two prior convictions each of assault, assault causing bodily harm, and unlawful possession of a weapon in a public place, and one conviction each of solicitation to possess a controlled substance, sale of a controlled substance, attempted possession of a controlled substance with intent to sell, possession of a controlled substance with intent to sell, domestic assault causing bodily harm, and being a felon in possession of a firearm. PSR ¶¶ 31–46. Three months before the instant offense, investigators executed a search warrant at Garner's residence and recovered a 9mm handgun and approximately 40 grams of crack cocaine, 1.9 grams of marijuana, 5.1 grams of cocaine, 19 morphine pills, over $5000.00 in cash, and a digital scale with powder residue. PSR ¶ 4.

At sentencing, the parties and the district court agreed that the base offense level was 24, less three points for acceptance of responsibility, resulting in an offense level of 21, with an advisory guidelines range of 77 to 96 months; the statutory maximum sentence is ten years. The district court declined to grant the government's request for a four-point enhancement for

possession of a firearm in connection with another felony offense based on the weapon found during the April 2, 2012 search, finding the three-month gap between the search and the instant offense too long a period of time. PID 108. Prior to the parties' arguments, the district court stated that "25 points usually results in an adjustment by the court or some recognition of the fact that the criminal history is understated by category VI, and that's the issue here." PID 107. The Court referred to paragraph 115 of the PSR, which pointed out that under § 4A1.3(a)(1), "if reliable information indicates that the defendant's criminal history category substantially underrepresents the seriousness of the defendant's criminal history or likelihood that the defendant will commit other crimes, an upward departure may be warranted." PID 109, PSR ¶ 115. The court noted that according to the PSR, Garner has a criminal history dating back to age 13, and there "appears to be a significant likelihood that the defendant will commit other crimes." PID 109 (quoting PSR ¶ 115). The court further noted that in determining whether an upward departure from criminal history category VI is warranted, it may consider the nature of the prior offenses rather than simply their number. PID 111. The court explained that it would typically "have gone up three levels" and "if you do that and we're going to talk about that – then . . . we would be at 100 to 125, but we can't go above 120, so it would be 100 to 120, and that's the way we would usually look at it." PID 112.[1]

> Counsel for the government then addressed the appropriate sentence, stating:
>
> [G]iven the defendant's criminal history, the nature and circumstances of this offense as well as the other 3553(a) factors found in Title 18, the government acknowledges the issues presented with the defendant's criminal history and his increasingly high criminal history points. In looking at the defendant's criminal history, it is clear that he has several prior drug offenses, most of those – from those offenses, it indicates that the defendant, although he has a history of

---

[1]Counsel for the government then stated that the undisputed guideline calculations are offense level 21, category VI. The district court agreed and clarified that the offense level was 21, category VI, absent an adjustment for criminal history. PID 113–114.

> substance abuse, he has a history of drug sales. In addition to that, he has a prior felony conviction for being a felon in possession of a firearm. His criminal history at a minimum is very disturbing. If you add to that the fact that he has, by all indications, the ability to do something other than (sic) his lack of crime makes it even more disturbing.

PID 114. Pursuant to the terms of the plea agreement, the government recommended a sentence at the low end of the guideline range of 77 to 96 months as well as substance-abuse counseling, G.E.D. training, and vocational training, PID 114–15, but nevertheless noted the court's discretion to impose a sentence up to the statutory maximum of 120 months. PID 115.

Counsel for Garner similarly recommended a sentence "around 77 months," arguing that Garner has natural intelligence and but for the tragedy in his personal life as a child–the murder of his father and the physical abuse he suffered at the hands of his mother's boyfriend–he might have been an engineer or another type of professional. Defense counsel acknowledged that the majority of Garner's criminal history involved drug sales, "there's no getting around what his record is," but argued that he was a low-level participant; further noted that Garner accepted responsibility for the firearm early on; and argued that even a sentence at the low end of the guidelines range would give him a chance to reflect on his life, take advantage of educational opportunities, and evaluate whether to reenter society. PID 116–17.

Garner addressed the court, stating that he knew he had "done wrong," "wants to be better," and planned to get his G.E.D. PID 117–18. He further stated that his drug dealing and drug use was due to his abuse as a child, but he accepted whatever sentence was pronounced and "wanted to do something different with his life." PID 118.

The court then discussed the underlying offense, as well as the fact that the April search had yielded a firearm and controlled substances. PID 119. Turning to Garner's criminal history, the court expressed concern over his 25 criminal-history points, noting that his criminal activity

started at an early age, he had regular contact with authorities as a juvenile, and had several instances of possession and sale of controlled substances as an adult, other instances of unlawful possession of a weapon, and instances of assault, including domestic assault. PID 121–22. The court also noted other criminal conduct described in the PSR that did not result in convictions, including possession of drug paraphernalia and possession of cocaine. PID 123. The court acknowledged that Garner only deals small quantities of drugs, but observed that Garner also has a history of violence and "issues" with firearms. *Id.* The court further noted that Garner's father, Jeffrey Jones, was murdered by his wife when Garner was 17,[2] that Garner had three siblings and children, that since his grandmother died, the family has not been together much, and that Garner suffered an abusive relationship at the hands of his mother's boyfriend.[3] PID 124. The court further noted Garner's early use of cocaine at age 15, which he used daily until his arrest for the instant offense. PID 125. The court noted that Garner had good grades in high school, was interested in getting his G.E.D., had taught himself some skills, and had some employment history, but not a significant amount due to drug dealing and incarceration. PID 125–26.

The court then discussed the § 3553(a) factors, explaining the importance of imposing sentences that will deter future crimes, and addressing Garner specifically:

---

[2]Jones's wife at the time of his murder was not Garner's mother.

[3]The PSR states that according to Garner, he witnessed "a lot of abuse" when he was a child. Garner reported that his mother's boyfriend beat his mother "whenever he could" and physically abused Garner, once knocking his teeth out. When Garner was 13, he ran away from home. According to juvenile court records, on August 10, 1992, Garner was charged as a runaway (adjusted nonjudicially). On June 30, 1994, Garner was charged with Truancy. During a subsequent juvenile court conference, Garner reported that he wanted to live with his grandmother because he was "tired of buying crack for his mother and [his mother's boyfriend]" and that if he went home without crack cocaine, he was physically abused. He further stated that his mother's boyfriend "goes crazy and beats everyone when he is messed up." PSR ¶¶ 72–73. Garner reported that he was stabbed on his left side by his mother's boyfriend when he was a child. PSR ¶ 80.

Now the sad thing about this is that here I have got a bright guy who certainly has some difficult emotional issues as a child, who if it had been a little different circumstance . . . might have turned out to have been a draftsman or engineer, or who knows what, you know, had real potential to do well, but that's not the person I have got before me. . . . I have got a person with 25 criminal history points. If I put you on the street right now, the expectation would be it is really going to be really hard to turn that ship, we're probably just going to be back into dealing drugs, having guns and engaging in violent conduct, so there is a real concern about that. Until there's a major change -- and, you know, people can always say there's going to be change, but the most likely course for anybody is if they're going in a direction to continue to go in the direction in which they're going. It's inertia, and so that's a real issue here. It's too bad again, because it didn't have to be that way, but we are where we are.

PID 128–29.

Looking to the advisory guidelines range of 77 to 96 months as well as the guideline's instruction to adjust upward if criminal history is not adequately accounted for, the court explained that a departure to 100 to 120 months would be appropriate:

Now, what we ought to do in this case, 24, points, you know, what I ought to do, what I need to do is recognize the inadequacy of the criminal history; at the same time, recognize you came in and you entered a plea, and we want you to get the benefit of acceptance of responsibility, I don't want you to out and say, well, I entered a plea and they gave me a sentence just like if I didn't enter a plea. . . . What it tells me is that the sentence in this case should be eight years and nine months. That gives you 15 months that you didn't get that [you] could readily have gotten had you gone to trial. . . . It also recognizes that criminal history was inadequate in this particular case, and it recognizes all those things in your background that we talked about . . . having, I think you said battle scars or something like that, war wounds from dealing with your stepdad, which was not good, and that shouldn't happen to anybody, but that's eight years and nine months. We considered everything.

PID 134–35. The court also sentenced Garner to three years of supervised release and recommended that Garner go to a facility with vocational training, get his G.E.D., and participate in group therapy in connection with drug rehabilitation. PID 138.[4]

---

[4] The government concedes that Garner may appeal his sentence.

After sentencing, the court asked counsel for Garner and counsel for the government "if there are any objections not previously raised?" PID 140. There were no further objections. PID 140–41.

## II.

We review the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). This review "is split into two parts: procedural reasonableness and substantive reasonableness." *United States v. Benson*, 591 F.3d 491, 500 (6th Cir. 2010). A sentence is procedurally unreasonable if the district court "fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the [18 U.S.C.] § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. A sentence is substantively unreasonable if a district court "selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Camiscione*, 591 F.3d 823, 832 (6th Cir. 2010) (citation omitted).

On appeal, Garner challenges his sentence on both procedural and substantive grounds. Where, as here, the defendant concededly failed to lodge any objection at the end of the sentencing hearing in response to a properly worded invitation from the court in compliance with *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), we review a challenge to the procedural reasonableness of the sentence for plain error. *United States v. Vonner*, 516 F.3d 382, 38586 (6th Cir. 2008) (en banc). Under *Bostic*, plain error review requires Garner to show (1) error (2) that "was obvious or clear" (3) that "affected defendant's substantial rights" and (4) that "affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner*,

516 F.3d at 386. "Only in exceptional circumstances will we find such error– only, we have said, where the error is so plain that the trial judge was derelict in countenancing it." *Id.* (citing *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (internal quotation marks and alterations omitted)). Garner's substantive reasonableness claim is reviewed for abuse of discretion, even where there is no objection. *United States v. Herrera Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009).

Where a sentence is outside the guidelines range, we do not apply a presumption of unreasonableness. *Gall*, 552 U.S. at 50. We may consider the extent of the deviation, but we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the variance. *Id.* The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is not sufficient to justify reversal of the district court. *Id.*

A.

The district committed no clear procedural error. Garner argues that it is unclear whether the district court properly calculated the guidelines range. However, it is undisputed that the district court properly calculated Garner's offense level as 21, with a criminal history category of IV. Later, when discussing whether to depart upward based on Garner's criminal history points, the district court made reference to "24 points," stating "Now, what we ought to do in this case is, 24 points, you know, what I ought to do, what I need to do is recognize the inadequacy of the criminal history . . . ." PID 134. The government contends that the district court was referring to Garner's criminal history points, which were actually 25 points, not his offense level. In context, the district court's statement was clearly in reference to Garner's criminal history. The district court explicitly based the sentence imposed on the guidelines' under-representation of Garner's

-8-

criminal history, and not an incorrect calculation of the appropriate guidelines range. Indeed, the

court clarified on the record that the correct offense level was 21. PID 113–14.

Garner next argues that the district court did not adequately explain its reasoning for an

upward departure other than stating that Garner's criminal history was understated. We disagree.

> The question in each case is whether the record makes clear that the sentencing
> judge listened to each argument, considered the supporting evidence, was fully
> aware of the defendant's circumstances and took them into account in sentencing
> him. Although the district court is not required to give the reasons for rejecting
> any and all arguments made by the parties for alternative sentences, for a sentence
> to be procedurally reasonable, when a defendant raises a particular nonfrivolous
> argument in seeking a lower sentence, the record must reflect both that the district
> judge considered the defendant's argument and that the judge explained the basis
> for rejecting it.

*United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) (internal citations and quotation

marks omitted); *United States v. Gunter*, 620 F.3d 642, 646 (6th Cir. 2010).[5] Because the district

court chose to sentence above the Guidelines, it was required to explain its decision. *Rita v.*

*United States*, 551 U.S. 338, 357 (2007). The district court fulfilled this obligation. The district

court displayed familiarity with the facts, gave both counsel and Garner the opportunity to

address the appropriate sentence, and discussed the impact of each § 3553(a) factor on the

analysis, including a detailed discussion of the reasons for its upward departure: Garner's long

criminal history since age 13 and propensity for engaging in drug and firearm-related offenses

and assault. The court explained that despite Garner's potential, a lower sentence would not

reflect the seriousness of the crime, would not deter those with prior felonies from possessing a

weapon, would lead to unwarranted disparities, and would fail to protect the public from future

crimes committed by Garner. *See Gall*, 552 U.S. at 53 (holding that sentence was procedurally

---

[5]It is somewhat unclear from the record whether the district court applied an upward departure or an upward variance. However, this court applies the same standard "regardless of whether the sentence enhancement constitutes a Guidelines departure or a § 3553(a) variance." *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008).

reasonable where the court calculated the applicable guidelines range, allowed both parties to present arguments as to what they believed the appropriate sentence to be, considered all of the § 3553(a) factors, and thoroughly documented its reasoning); *Gunter*, 620 F.3d at 647 (holding that Gunter's sentence was procedurally reasonable where the court displayed familiarity with the facts, engaged in back and forth with counsel, and explained the reason for its decision in a clear and straightforward manner). The district court's careful consideration of the § 3553(a) factors and straightforward explanation of its reasoning provide a sufficient basis for meaningful appellate review. *See United States v. Almonte-Rosa*, 378 F. App'x 491, 495 (6th Cir. 2010). On this basis, we conclude that there was no plain procedural error.

B.

Garner also claims that his sentence is substantively unreasonable, arguing that this court should apply proportional review to sentences outside of the guidelines range. However, the Supreme Court expressly held in *Gall* that proportional review is "inconsistent with the rule that the abuse-of-discretion standard of review applies to appellate review of all sentencing decisions–whether inside or outside the Guidelines range." *Gall*, 552 U.S. at 49.

Garner next argues that although the district court "opined at great length about the § 3553 factors" (Appellant's Br. at 11), it failed to provide an adequate explanation of why it chose the sentence it did. When reviewing the reasonableness of an upward departure, we consider:

> the seriousness of the defendant's past criminal conduct, the likeliness of recidivism, prior similar adult conduct not resulting in criminal convictions, previous lenient sentences for offenses, whether the sentence will have a deterrence on future criminal conduct, the necessity of isolating the defendant from the community and the length of time necessary to achieve rehabilitation, if rehabilitation is possible.

*United States v. Griffin*, 530 F.3d 433, 441 (6th Cir. 2008) (internal quotation marks and citations omitted). We recognize the authority of district courts to "engage in individualized sentencing within reason" in applying the § 3553 factors to the criminal defendants before them. *Vonner*, 516 F.3d at 392. District courts "have considerable discretion in this area and thus deserve the benefit of the doubt when we review their sentences and the reasons given for them." *Id.*

Garner relies on this court's decisions in *United States v. Smith*, 474 F.3d 888 (6th Cir. 2007) and *Griffin*, 530 F.3d at 441. In *Smith,* the district court not only explained the reason it was departing upward, but also provided an analysis of the § 3553(a) factors, including an examination of each of Smith's prior convictions, and concluded that Smith had a history of drug abuse, possession of dangerous firearms, and acts of violence against women that showed an "utter disregard for the law throughout the course of his life." *Id.* at 894. The sentencing court recognized that the sentence would keep Smith off the street and that that alone was a benefit to the safety of the community. *Id.* The sentencing court also recognized Smith's objections and explained why a downward departure was not granted. *Id.* This court held that the sentencing court acted within its discretion, explaining, "We do not require a rote recitation of § 3553 factors but rather an explanation of why the district court chose the sentence it did. The court below examined many of the § 3553(a) factors and attached to them a not unreasonable weight." *Id.*

Similarly, in *Griffin*, this court held that the district court did not abuse its discretion in departing upward where it found that Griffin's criminal-history category substantially underrepresented the seriousness of his criminal history or the likelihood that he would commit other crimes, and "thoroughly considered" the § 3553(a) factors, noted previous periods of incarceration, and related Griffin's criminal history in detail. *Griffin*, 530 F.3d at 441.

Garner attempts to distinguish the instant case from *Smith* and *Griffin*, arguing that the district court did not make a specific finding that there was a high risk of recidivism, did not explain why a sentence within the guidelines would not lessen the risk of recidivism, and did not explain how an upward departure would better accomplish that goal. However, the instant case is analogous to *Smith* and *Griffin*. The district court found that Garner's criminal history category inadequately represented his criminal history, considered the § 3553(a) factors, and departed upwards based on the need to protect the public, the need for deterrence, and the strong likelihood that Garner would reoffend. The court explained that because of Garner's long and substantial criminal history, including a detailed examination of Garner's repeated commission of drug and firearm crimes, a shorter sentence would not promote respect for the law, and, if Garner were "out on the street," he would "probably go back into dealing drugs, having guns, and engaging in violent conduct." PID 127–29. *See United States v. Tristan-Madrigal*, 601 F.3d 629, 634–35 (6th Cir. 2010) (affirming substantive reasonableness of above-guidelines sentence based on the defendant's repeated commission of the same criminal activity because it was "extremely relevant" to preventing recidivism, to protecting the public, and to promoting respect for the law); *Gunter*, 620 F.3d at 647 (affirming substantive reasonableness of six-level upward departure where the district court considered Gunter's "lengthy and alarming" criminal history in relation to the need to promote respect for the law, the need for specific deterrence of future conduct by Gunter, and the need to protect the public). When imposing an upward departure, the district court "was not required to explain formalistically, gridblock-by-gridblock, why each intervening range was inappropriate" and did not err in employing its independent judgment to reach a result that accounted for Garner's unique circumstances. *Griffin*, 530 F.3d at 441. The district court did not consider any irrelevant or impermissible factors, did not attach unreasonable

weight to the § 3553(a) factors, addressed arguments offered by Garner in mitigation, noted that the statutory maximum would have been justified absent Garner's acceptance of responsibility, and clearly explained why an upward departure was necessary. Therefore, Garner's sentence was reasonable and the district court did not abuse its discretion in sentencing him.

CONCLUSION

For these reasons, we AFFIRM the sentence imposed by the district court.