NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0172n.06

No. 20-6345

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED
Apr 02, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| JONATHAN MARK BRINDA, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: SILER, THAPAR, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Since completing his prison sentence for a child-pornography crime, Jonathan Brinda has violated the conditions of his supervised release many times. During the last violation, Brinda confessed that he had taken the "opportunity" to brush up against young girls at a Walmart and had lied about his conduct to his probation officer. The district court sentenced him to nine months' imprisonment and ten years' supervised release. Brinda now claims that this sentence was unreasonable. We disagree and affirm.

I

Brinda illegally downloaded hundreds of images of child pornography. In 2007, he pleaded guilty to one count of receiving child pornography in exchange for the dismissal of many other counts. *See* 18 U.S.C. § 2252A(a)(2)(A). The district court sentenced Brinda to five years'

imprisonment followed by a lifetime of supervised release. His prison term ended in November 2011.

Brinda's term of supervised release has been a rocky one. Given the nature of his crime, the district court's sentence included many supervised-release conditions. Brinda was required to, among other things, participate in a sex-offender treatment program, take polygraph tests, and truthfully answer inquiries from his probation officer. He also could not possess illegal material or use other material "for the purpose of deviant sexual arousal." And he could not visit a home where children live or places where they normally congregate without his probation officer's permission. The district court has revoked Brinda's supervised release and sent him back to prison for violating these conditions on four occasions.

The conduct that triggered Brinda's first supervised-release revocation began immediately. Two days after his release, he started viewing explicit images of girls as young as five years old. He had even mailed some of these images to himself while still in prison (violating 18 U.S.C. § 2252(a)(2)). Brinda also frequented Walmart to voyeuristically watch young girls, and he repeatedly lied to his probation officer and sex-offender therapist about his behavior. Brinda's therapist opined that he should be returned to prison for a "pretty long time" because he had not learned that his conduct is wrong even after a five-year sentence. In March 2012, Brinda admitted to violating various supervised-release conditions. The district court sentenced him to 23 months' imprisonment followed by 25 years' supervised release.

Brinda was released from prison in October 2013. By April 2014, he had, among other things, consumed alcohol and lied about his sexual arousal when bumping into a young girl. Based on this behavior, the court modified his supervised release by requiring him to serve four weekends in jail. Over the next year, though, Brinda continued to deceive his probation officer on several

topics, including his possession of pornography and use of drugs. By April 2015, he had failed two polygraph tests. The test results indicated that Brinda lied about whether he had "touched the sexual parts of anyone [he] knew to be under 18 years old," "asked anyone under 18 years old to touch [his] sexual parts," or "been completely alone with anyone [he] knew to be under 18 years old." He admitted to lying about how he "seeks out" young girls to watch at Walmart and how he later sexually fantasizes about these girls without disclosing his thoughts (behaviors that violated his sex-offender treatment program). In June 2015, Brinda admitted to violating his supervised-release conditions again. For this second violation, the court sentenced him to six months' imprisonment followed by five years' supervised release.

The district court revoked Brinda's supervised release a third time in November 2018. He admitted to driving a young boy home without reporting it. He also admitted that he had not been "completely honest" with his probation officer and during polygraph exams. For this third violation, the court sentenced him to three months' imprisonment followed by five years' supervised release.

That brings us to Brinda's fourth revocation—the one at issue now. In February 2020, Brinda failed another polygraph test. He then admitted to the polygraph examiner and his probation officer that he had seen three young girls ranging from six to ten years old near the exit at Walmart. Brinda stated that he had taken "the opportunity to walk past the children," that he had gotten "too close for comfort" to the point that he "may have brushed up against the girls," and that he had "masturbated to the thought of them when he returned home." Pet., R.79, PageID#236–37. His probation officer told him not to visit Walmart again. But a police officer spotted Brinda there a few months later, and Brinda lied about his visit. Due to his conduct, Brinda agreed to spend 180 days in home confinement (with certain exceptions) and to wear an electronic-

monitoring device on his ankle. Yet he proceeded to trigger his ankle monitor's "tamper alert" four times after repeated instructions not to do so.

Brinda's probation officer petitioned the district court to revoke his supervised release. This time, Brinda did not admit to violating any supervised-release condition. The district court thus held a hearing. Following the probation officer's testimony, the court found that Brinda had indeed violated several conditions. It concluded that Brinda had not been honest with his probation officer, had failed to follow the officer's instructions, and had tampered with his ankle monitor. After calculating Brinda's guidelines range as three to nine months' imprisonment, the court imposed a nine-month prison sentence and a ten-year term of supervised release.

## II

On appeal, Brinda does not challenge his supervised-release conditions or the finding that he violated them. *Cf. United States v. Preacely*, 702 F.3d 373, 376 (7th Cir. 2012); *United States v. Lewis*, 498 F.3d 393, 395 (6th Cir. 2007). He instead challenges the procedural and substantive reasonableness of his sentence. We review a district court's sentence in this supervised-release context using the same abuse-of-discretion standard that governs sentences imposed after a conviction. *See United States v. Bolds*, 511 F.3d 568, 575 (6th Cir. 2007). And the district court in this case did not abuse its discretion in either of the two ways that Brinda claims.

### A. Procedural Reasonableness

Brinda first argues that his sentence was "procedurally unreasonable." As its name implies, this type of challenge "is a process-driven one." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). It asserts an error in the way that the district court chose the sentence, such as a miscalculation of the guidelines range or a clearly erroneous finding of fact. *See id.* In this case, Brinda claims that the court did not "adequately explain why it chose the sentence." *Id.*

4

Brinda is mistaken. A district court provides an adequate explanation if the transcript shows that the court "'considered the parties' arguments and ha[d] a reasoned basis' for the sentence." *United States v. Sabit*, 797 F. App'x 218, 222 (6th Cir. 2019) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). And here, the district court was quite clear about why it chose the sentence that it did. When balancing the sentencing factors in 18 U.S.C. § 3553(a), the court emphasized the need for a sentence that protects the public and generates adequate deterrence. *Id.* § 3553(a)(2)(B)–(C). Highlighting Brinda's continuing conduct at Walmart, the court explained that Brinda had been playing a "game of roulette" and "flirting with disaster" by "[g]oing to a public place where" he knows he will encounter kids. Tr., R.96, PageID#408, 411. "[G]iven the kinds of thoughts" Brinda was having, the court expressed concern that he was coming closer and closer to "doing something that is really going to change somebody's life." *Id.*, PageID#409. It thus resolved "to put a stop to" Brinda's "brinksmanship." *Id.*, PageID#410.

Even so, Brinda responds, the district court failed to adequately address his mitigating circumstances, including that he takes care of his elderly father, that he needs continuing therapy for his rehabilitation, and that he is in poor health. Brinda is correct that a district court must consider a defendant's nonfrivolous arguments in favor of a reduced sentence. *See, e.g.*, *United States v. Sweeney*, 891 F.3d 232, 239 (6th Cir. 2018); *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009). But his reliance on this principle has two problems.

Problem One: A district court need not address sentencing arguments "raised only in passing." *See United States v. Brooks*, 628 F.3d 791, 798 (6th Cir. 2011) (quoting *United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008)); *see also, e.g.*, *United States v. Bistline*, 605 F. App'x 529, 533 (6th Cir. 2015); *United States v. Escalon-Velasquez*, 371 F. App'x 622, 625 (6th Cir. 2010). Brinda's claimed poor health is one such argument. He vaguely told the court

that he needed some type of surgery and a prostate-cancer test, but he did not offer details about his health problems or explain why they should affect his sentence.

Problem Two: The district court adequately addressed Brinda's claims. When rejecting a defendant's arguments in favor of a more lenient sentence, a district court "need not engage in a formulaic point-by-point refutation" of each argument. *Sabit*, 797 F. App'x at 222 (quoting *Sweeney*, 891 F.3d at 239). Rather, the district court's reasons for rejecting the arguments need only be apparent from the sentencing transcript as a whole. *United States v. Chiolo*, 643 F.3d 177, 182 (6th Cir. 2011); *see also United States v. Coleman*, 835 F.3d 606, 616–17 (6th Cir. 2016).

That is the case here. The district court stated that it had "considered [Brinda's] history and characteristics," but decided that nothing about this background warranted a lower sentence in light of Brinda's misconduct. Tr., R.96, PageID#410. In fact, the court noted that it did not usually "have a lot of concern" that defendants like Brinda would commit "contact crimes," but it could not reach that conclusion for Brinda. *Id.* The court thus impliedly found that Brinda's risks to the public (and in particular to children) outweighed the interests that Brinda invoked, including his elderly father's needs. After all, a defendant's history and characteristics include things like family obligations and health problems. *See Chiolo*, 543 F.3d at 183. The court also specifically accounted for Brinda's need for therapy. That is why it ordered him to participate in mental-health treatment during his term of supervised release.

## B. Substantive Reasonableness

Brinda next argues that the district court imposed a "substantively unreasonable" sentence. This type of challenge focuses on the sentence's ultimate length. *Rayyan*, 885 F.3d at 442. A sentence might be too long, for example, if a defendant shows that "the court placed too much weight on some of the § 3553(a) factors and too little on others[.]" *Id.* That showing is not an

easy one. We presume that a sentence is reasonable when, as here, it falls within the guidelines range. *United States v. Lynde*, 926 F.3d 275, 279 (6th Cir. 2019). And we must give "due deference" to the district court's conclusion that the balancing of the § 3553(a) factors warranted the sentence that it chose. *See Gall v. United States*, 552 U.S. 38, 51 (2007).

Brinda cannot overcome the deference that we owe the district court. The district court started with Brinda's guidelines range. *See* 18 U.S.C. § 3553(a)(4). It then opted for a sentence on the range's high end because of the need to protect the public and deter Brinda's behavior. *Id.* § 3553(a)(2)(B)–(C). It also highlighted the need to get Brinda to respect the law, discussing his many supervised-release violations and many lies to the probation office. *Id.* § 3553(a)(2)(A). It lastly found that these factors outweighed Brinda's history and characteristics. *Id.* § 3553(a)(1). We see no abuse of discretion in the district court's careful balance of the relevant factors or its conclusion that they warranted a nine-month sentence and a ten-year term of supervised release.

Brinda's two responses lack merit. He initially asserts that the district court blindly focused on only "the interaction between [him] and his probation officer." To the contrary, that interaction was not even the primary reason for the sentence. The district court was "candid" about what was driving its decision: The public was put at risk by Brinda's recurring choice to intentionally seek out places where children are located in order to watch them for voyeuristic reasons. And regardless, the court quite properly considered Brinda's decade-long refusal to be honest with his probation officers as an additional reason for the sentence. *See, e.g.*, *United States v. Williams*, 805 F. App'x 374, 378–79 (6th Cir. 2020); *United States v. Glass*, 749 F. App'x 434, 441–42 (6th Cir. 2018); *United States v. Ramsey*, 600 F. App'x 455, 455–56 (2015) (per curiam).

Brinda next claims that the district court's ten-year term of supervised release was too long because the court imposed only five-year terms for his two prior supervised-release violations.

Yet the district court offered a reasoned basis for this longer term. Brinda's habitual supervised-release violations had shown "an unwillingness to reform his lifestyle." *United States v. Pratt*, 297 F. App'x 475, 478 (6th Cir. 2008); *see United States v. Pratt*, 589 F. App'x 325, 327 (6th Cir. 2015) (per curiam); *Lewis*, 498 F.3d at 400. The district court thus explained that it did not "trust" Brinda and that the probation office needed to "watch [him] a little more closely" to make sure he did not "do anything worse." Tr., R.96, PageID#408, 411.

In the end, Brinda's substantive-reasonableness challenge "boils down to an assertion that the district court should have balanced the § 3553(a) factors differently." *United States v. Goode*, 834 F. App'x 218, 221 (6th Cir. 2020) (citation omitted). "But our job is not to rebalance the factors; it is to ensure that the district court's balance was reasonable." *Id.* The district court's explanation for Brinda's sentence safely surmounts that low bar.

We affirm.